GYN–OB CONSULTANTS, L.L.C., and Stephen E. Coats, M.D., Appellants–Defendants,

v.

Lynn C. SCHOPP and Thomas C. Schopp, Appellees–Plaintiffs.

No. 02A03–0203–CV–73.

Court of Appeals of Indiana.

Jan. 13, 2003.

Michael H. Michmerhuizen, Tina M. Bell, Barrett & McNagny, LLP, Fort Wayne, IN, Attorneys for Appellants.

Ronald E. James, Benson, Pantello, Morris, James & Logan, Fort Wayne, IN, Attorney for Appellees.

## OPINION

BAKER, Judge.

Appellants-defendants, GYN–OB Consultants, L.L.C., and Stephen E. Coats, M.D., (collectively, "the Doctor") appeal the grant of partial summary judgment to the appellees-plaintiffs, Thomas and Lynn Schopp (collectively, "the Patient").[1] Specifically, the Doctor argues that the trial court erred when it determined there was an issue of fact regarding whether the Doctor had fraudulently concealed a certain surgery he performed on the Patient. The Patient also cross-appeals, arguing that the trial court erred when it granted the Doctor's motion for summary judgment on the ground that there was no issue of fact as to whether the Doctor was negligent in the manner in which the surgery was performed. Concluding that the Patient's medical malpractice action was not timely filed, we reverse the denial of

---

1. This action arises out of surgery Dr. Coats performed on Lynn Schopp. Dr. Coats practiced with GYN–OB Consultants. Thomas Schopp's claim was for loss of consortium.

the Doctor's motion for summary judgment and affirm the grant of the Doctor's motion for summary judgment with respect to the Patient's negligence claim.[2]

## FACTS

From 1993 through 1999, the Patient was both a patient of the Doctor and a periodic employee of GYN–OB consultants. In 1996, the patient sought treatment from the Doctor in the form of a total hysterectomy. Some two months before the hysterectomy was performed, the Patient told the Doctor that she had noticed some skin tags[3] on her vagina and that they itched. She asked the Doctor whether they were a health risk. He advised that they were not, that they appeared normal, and that he could remove them that day in the office. The Patient declined to have the skin tags removed that day.

In early October 1996, the Patient told the Doctor she did not want unnecessary surgery and that she would advise him on the morning of the hysterectomy whether she wanted the skin tags removed. The Doctor performed the hysterectomy on October 30, 1996. The Doctor removed the skin tags when he performed the hysterectomy. After the surgery the Doctor asked the Patient why she had not signed a consent for the Doctor to remove the skin tags, and the Patient told the Doctor she did not want them removed.[4]

On November 19, 1996, the Patient scheduled an appointment with the Doctor because the appearance of her clitoris had changed. On December 9, 1996, the Patient complained to the Doctor that she was experiencing swelling and discomfort in her vagina. At the December 9 appointment, the Doctor told her that he had removed the skin tags at the time of the hysterectomy. The Patient asked the Doctor whether the removal of the skin tags was related to the discomfort she was experiencing near her clitoris, as the skin tags she had discussed with the Doctor on October 9 were not located near her clitoris. The Doctor told her there was no connection and that he had not operated near her clitoris.

On December 28, 1998, the Patient was making copies of her medical chart in preparation for an upcoming appointment at the Mayo clinic. She noticed that the surgical report for the October 30, 1996 procedure was missing. She requested the report from the hospital where the surgery was performed and learned the Doctor had performed surgery near her clitoris.

The Patient initiated this action with a proposed complaint that was filed with the Department of Insurance on February 4, 1999. The complaint alleged the Doctor performed unauthorized and improper surgery. The medical review panel determined the Doctor was not negligent and acted within the appropriate standard of care. However, it found an issue of fact remained as to whether the Patient had

---

2. We heard oral argument on November 15, 2002, at the Defense Trial Counsel of Indiana seminar. We thank the DTCI for its hospitality and commend counsel for their capable advocacy.

3. Skin tags are soft, small, flesh-colored skin flaps on the neck, armpits, or groin. University of Maryland Medicine, *Dermatology Health Guide*, *available at* http://www.umm.edu/dermatology-info/oth-

er.htm. The Patient also refers in her brief to the removal of "lesions" and "a small crusty elevated area." Appellees' Br. p. 17, 19. These terms apparently refer to what the trial court called "skin tags."

4. Neither party indicates in its brief whether the Patient so advised the Doctor on the morning of the surgery.

given the Doctor consent to remove the skin tags.

On November 15, 2000, the Patient filed a complaint in the Allen Circuit Court alleging in part that the Doctor had performed unauthorized, unnecessary, and careless surgery on the Patient. That complaint is captioned as one for "Sexual Battery and Genital Mutilation." Appellees' App. p. 1. It alleged the Doctor performed "unauthorized, unnecessary and careless surgery" on the Patient. Appellees' App. p. 1.

The Doctor moved for summary judgment, asserting in part that the Patient's claim of battery was barred by the statute of limitations. That motion was denied, but the trial court granted summary judgment for the Doctor on the issue of whether the Doctor was negligent in the manner of performing the surgery. We granted the Doctor leave to bring this interlocutory appeal. The Patient cross-appealed, asserting the trial court erred in its grant of partial summary judgment for the Doctor on the question of whether the surgery was performed negligently.

### DISCUSSION AND DECISION

#### I. Standard of Review

In reviewing the grant of a summary judgment motion, we apply the same standard applicable in the trial court. Summary judgment is appropriate when the designated evidence shows that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C); *Elliott v. Sterling Mgmt. Ltd., Inc.*, 744 N.E.2d 560, 563 (Ind.Ct.App.2001). Although the party who lost below has the burden of persuading the reviewing court that the grant of summary judgment was erroneous, we will carefully assess the trial court's decision to ensure that party was not improperly denied his day in court. *Id.* All facts and reasonable inferences drawn from those facts are construed in favor of the party that lost below. *Id.*

#### II. Concealment

We note that a medical malpractice claim must generally be brought within two years of the alleged act, omission, or neglect. Ind.Code § 34–18–7–1(b). The surgery at issue in the case before us was performed October 30, 1996. The Patient filed her proposed complaint with the Department of Insurance on February 4, 1999, over two years after the surgery. The trial court's partial denial of the Doctor's motion for summary judgment was premised on the existence of a question of material fact as to whether the Doctor had concealed, until December 28, 1998, the fact that he had performed surgery near the Patient's clitoris. Because the Patient learned on December 9, 1996, that the skin tags had been removed without her consent, her complaint was not timely filed.

The Patient alleges both active and constructive concealment [5] of the surgery be-

---

**5.** The Patient also argues at some length that the statute of limitations would be unconstitutional as applied to her, relying on *Martin v. Richey*, 711 N.E.2d 1273 (Ind.1999), and *Halbe v. Weinberg*, 717 N.E.2d 876 (Ind.1999). Both of those decisions found the statute of limitations unconstitutional as applied to patients who were unable to discover their malpractice claim before the limitations period expired. Our supreme court noted in *Martin* that:

the medical malpractice statute of limitations is unconstitutional as applied when plaintiff did not know or, in the exercise of reasonable diligence, could not have discovered that she had sustained an injury as a result of malpractice, because in such a case the statute of limitations would impose an impossible condition on plaintiff's access to courts and ability to pursue an otherwise valid tort claim. To hold otherwise would be to require a plaintiff to bring a claim for

cause she did not know until December 1998 that her clitoral area had been cut and the Doctor "had been steadfast … in his denial of cutting anywhere near her clitoris" until at least January 1999. Appellees' Br. p. 11.

■■■ Where a defendant, by deception or violation of a duty, has concealed material facts from a plaintiff preventing the discovery of a wrong, the defendant is estopped from asserting a statute of limitations defense. *Hopster v. Burgeson,* 750 N.E.2d 841, 854 (Ind.Ct.App.2001). There are two types of fraudulent concealment, active and passive. *Id.* Passive or constructive concealment may be merely negligent and arises when the physician does not disclose to the patient certain material information. *Id.* "The physician's failure to disclose that which he knows, or in the exercise of reasonable care should have known, constitutes constructive fraud." *Id.* (quoting *Cyrus v. Nero,* 546 N.E.2d 328, 330 (Ind.Ct.App.1989)). Where the concealment is passive, the statute of limitations begins to run at the time the patient-physician relationship ends or, as in the active concealment case, until discovery, whichever is earlier. *Coffer v. Arndt,* 732 N.E.2d 815, 821 (Ind.Ct.App.2000), *trans. denied.*

■■■ Active concealment involves affirmative acts of concealment intended to mislead or hinder the plaintiff from obtain-

ing information concerning the malpractice. *Id.* When active concealment is involved, the statute does not expire until a reasonable time after the patient discovers the malpractice or with reasonable diligence could have discovered the malpractice. *Hopster,* 750 N.E.2d at 854.[6]

■■■ Despite the evidence of concealment, the Patient did not timely bring this action because she experienced, almost immediately after the surgery, symptoms that should have led to the discovery of the removal of the skin tags. Moreover, the patient was specifically told that the skin tags had been removed without her consent. The statute of limitations therefore began to run at the latest on December 9, 1996, and expired at the latest in December 1998 before she filed her proposed complaint.

In *Johnson v. Gupta,* 762 N.E.2d 1280, 1283 (Ind.Ct.App.2002), we determined that the medical malpractice statute of limitations is tolled until the patient experiences symptoms that would cause a person of reasonable diligence to take action that would lead to the discovery of the malpractice. There, Dr. Gupta performed a laser hemorrhoidectomy on Johnson. "Almost immediately after surgery, Johnson 'knew there was something wrong' and became incontinent of stool." *Id.* at 1282. Dr. Gupta assured Johnson the symptoms would disappear. Almost four years later,

---

medical malpractice before becoming aware of her injury and damages, an essential element of any negligence claim, and this indeed would be boarding the bus to topsy-turvy land.
711 N.E.2d at 1284.
As discussed below, the type of latent injury addressed in *Martin* and *Halbe* includes situations where the patient does not experience any symptoms that might indicate malpractice. The medical malpractice statute of limitations "is an occurrence-based statute of limitations that passes constitutional muster

except in cases where the patient does not suffer symptoms that put the patient on notice that something may have gone wrong in the course of medical treatment." *Johnson v. Gupta,* 762 N.E.2d 1280, 1283 (Ind.Ct.App. 2002) (emphasis added). We accordingly believe the Patient's claim is more usefully examined as one of concealment rather than as a constitutional question.

6. The Doctor does not appear to argue the Patient did not act within a "reasonable time."

a different doctor informed Johnson her rectal muscles had been severed during the procedure. Johnson filed a malpractice complaint within two years after that diagnosis. The trial court granted summary judgment for Dr. Gupta.

Johnson argued on appeal that her incontinence was a "latent injury" and she did not discover the malpractice or any resulting injury or facts that, in the exercise of reasonable diligence, should have led to the discovery of Dr. Gupta's alleged malpractice until she was informed some four years later that Dr. Gupta had severed her rectal muscles during the operation. *Id.* at 1282–83. We distinguished prior decisions that addressed the situation where a patient suffers no discernible pain or symptoms until several years after the alleged malpractice, which decisions held that a patient cannot reasonably be expected to investigate the cause of a problem that is not yet made manifest.

We declined to hold in *Gupta* that the statute of limitations is tolled until the patient discovers a causal link between the physician's actions and the patient's injury. Such a test, we noted, would miss the point of the exception created in the prior decisions: "The fact that Gupta did not discover the ultimate cause of [Johnson's] incontinence does not change the fact that she experienced discernible symptoms." *Id.* at 1283. As a result, we held, the statute is tolled until the patient experiences symptoms that would cause a person of reasonable diligence to take action that would lead to the discovery of the malpractice. *Id.*

Our reasoning in *Gupta* dictates the same result here. The Patient is a nurse with several years' experience. Immediately after the surgery, her vaginal area was swollen and painful. About three weeks later she noticed her clitoris had changed appearance and she scheduled an appointment with the Doctor. About a month after that she again saw the Doctor about pain and swelling in her vagina and the Doctor told her he had removed the skin tags in the course of the hysterectomy.

Here, as in *Gupta*, the Patient experienced from the outset symptoms that were apparently related to the alleged malpractice or that at the very least would cause a person of reasonable diligence to take action that would lead to the discovery of the malpractice. The Doctor's denial that he operated near the Patient's clitoris, like Dr. Gupta's failure to discover the reason for Johnson's incontinence, does not change the fact that the Patient experienced discernible symptoms. The statute of limitations therefore was not tolled. The Patient had within two years of December 9, 1996, at the latest, information that should have led her to the discovery of the malpractice.

### III. Negligence

■ After determining that the statute of limitations had not expired as to the Patient's battery claim concerning the unauthorized removal of the skin tags near her clitoris, the trial court found the Patient had "failed to offer designated materials to rebut [the Doctor's] prima facie proof that [the Doctor] exercised the requisite standard of care in the manner in which he performed the surgical removal of skin tags or lesions near [the Patient's] clitoris." Appellants' App. p. 13. Because we find the limitations period had expired, we need not address the Patient's assertion on cross-appeal that the Doctor was negligent in the manner in which he removed the skin tags.

We note, however, that the medical review panel opined the Patient's evidence did not support the conclusion that the Doctor failed to meet the applicable stan-

dard of care, and the record before us is devoid of designated evidence that the performance of the surgery did not meet the applicable standard of care.

Dr. Stephen Hollenberg, one of the doctors on the medical review panel who was later deposed by the Patient, signed the medical review panel's opinion. The Patient asserts, without explanation or citation to the record, that Dr. Hollenberg's deposition testimony noted "three specific courses of conduct, . . . which fell below the standard of care," one of which was that the Doctor "actually committed malpractice in the manner in which he cut." Appellees' Br. p. 21.

In the only part of his deposition to which the Patient directs us in her Statement of Facts for Review, Dr. Hollenberg testified regarding consent to operate near the clitoris:

Q: If the discussions were of lesions in the half closer to the posterior fourchette . . . would it be malpractice to operate on the labia minora in the upper half near the clitoral hood?

A: Well, I suppose so, but there would be no reason to. You know, if the lesions were lower, then there would be no reason to remove anything from the anterior part.

Appellants' App. p. 109. It is apparent from the language and the context of this exchange in the deposition that Dr. Hollenberg was addressing only the issue of the Patient's consent, and not negligence in the manner of performing the surgery. Therefore, we agree that the Patient has designated no evidence to rebut the medical review panel's opinion as to whether the Doctor acted within the requisite standard of care.

## CONCLUSION

In light of our discussion above, we conclude that the patient's medical malpractice action brought on February 4, 1999, was barred by the statute of limitations. We accordingly reverse the denial of the Doctor's motion for summary judgment on that basis, and affirm the grant of the Doctor's motion for summary judgment as to the Patient's allegation of negligence.

Affirmed in part and reversed in part.

BAILEY, J., concurs.

VAIDIK, J., concurs in part and dissents in part, with opinion.

VAIDIK, Judge, concurring in part, dissenting in part.

I respectfully dissent from the majority's conclusion that the Patient did not timely bring this action because she experienced symptoms almost immediately after her October 30, 1996, surgery that should have led to the discovery of the removal of the skin tags near her clitoris. Although it is true that the Patient experienced symptoms almost immediately after the surgery, the Doctor, whom the Patient should have been able to reasonably rely upon, told her that he had not operated near her clitoris when in fact he had. Because the evidence most favorable to the Patient indicates that she did not have adequate information that would have led to the discovery of the malpractice until December 28, 1998, when she first learned that the Doctor removed skin tags from near her clitoris, and that the Patient instituted her action within a reasonable time after that date, I would affirm the trial court's denial of the Doctor's motion for summary judgment on this issue.

"The doctrine of fraudulent concealment operates to estop a defendant from asserting a statute of limitations defense when that person, by deception or a violation of a duty, has concealed material facts from the plaintiff thereby preventing discovery

of a wrong." *Hughes v. Glaese*, 659 N.E.2d 516, 519 (Ind.1995) (quotation omitted). There are two types of fraudulent concealment, active and constructive. *Id.* Active concealment involves affirmative acts of concealment intended to mislead or hinder the plaintiff from obtaining information about the malpractice. *Coffer v. Arndt*, 732 N.E.2d 815, 821 (Ind.Ct.App. 2000), *reh'g denied, trans. denied.* Constructive concealment involves the failure to disclose material information to the patient. *Id.* If the concealment is active, then the statute of limitations is tolled until the patient discovers the malpractice or in the exercise of due diligence should discover it. *Id.* If the concealment is constructive, then the statute of limitations is tolled until the termination of the physician-patient relationship or, as in the active concealment case, until discovery, whichever is earlier. *Id.* "Regardless whether the fraudulent concealment is active or constructive, a plaintiff must institute an action within a reasonable time after a patient learns of the malpractice, or discovers information which would lead to the discovery of malpractice if the patient exercises reasonable diligence." *Hughes*, 659 N.E.2d at 519 (quotation omitted).

Here, the record shows that about two months before the surgery, the Patient spoke with the Doctor about three skin tags on the right side of her vagina that were at least 3 cm down and away from her clitoris. The Patient told the Doctor that she would inform him on the morning of the surgery whether she wanted the skin tags removed. She never gave him consent to remove the skin tags. On October 30, 1996, the Patient underwent a total hysterectomy. About a week following the surgery, the Patient began to feel swelling and discomfort in and around her clitoris. On November 19, she scheduled an appointment with the Doctor because the appearance of her clitoris had changed. On December 9, the Patient told the Doctor that she was experiencing pain, swelling, and discomfort near her clitoris. At that time, the Doctor told her that he had removed skin tags at the time of the hysterectomy. The Patient then asked the Doctor whether the removal of the skin tags was related to the discomfort she was experiencing because the skin tags she had discussed with him before the surgery were not located near her clitoris. The Doctor told her that there was no connection, that he had not operated near her clitoris, and that it was probably referred pain from the hysterectomy. On December 28, 1998, the Patient learned that the Doctor had removed skin tags from near her clitoris. Accordingly, on February 4, 1999, she filed a proposed complaint with the Indiana Department of Insurance.

The majority concedes that there was evidence that the Doctor concealed from the Patient that he had operated near her clitoris. Yet, the majority finds that the Patient had information that should have led to the discovery of the removal of the skin tags near her clitoris. I respectfully disagree. First and foremost, a patient should be able to reasonably rely upon what her doctor tells her. This is especially so here, where the Patient specifically asked the Doctor if the pain near her clitoris was related to the removal of the skin tags, and the Doctor replied that there was no connection because he did not operate anywhere near her clitoris when in fact the post-operative report reveals that he had. This factual situation is much different from cases where there is no fraudulent concealment, and the patient experiences symptoms from the outset but does nothing about it until years down the road. *See Johnson v. Gupta*, 762 N.E.2d 1280, 1282–83 (Ind.Ct.App.2002) (finding that the patient did not timely bring her

medical malpractice action because she experienced symptoms almost immediately after surgery but did not discover a causal link between her symptoms and the malpractice until four years later). In this case, what arguably may have been obvious at first, as in *Johnson*, became muddled once the Doctor explicitly and inaccurately told the Patient that he did not operate near her clitoris.

Second, the result in this case promotes fraudulent misrepresentations in that as long as a doctor tells his or her patient a kernel of truth, the statute of limitations continues to run because the patient can be later held to have information that should have led to the discovery of the malpractice. Here, the kernel of truth that the majority relies upon is that the Doctor told the Patient that he removed skin tags. However, that kernel of truth was accompanied by the Doctor's explicit denial of operating near the Patient's clitoris, which is at the heart of the malpractice.

In light of the materiality of the concealment, the Patient's right to reasonably rely upon the Doctor, and the fact that to hold otherwise promotes fraudulent misrepresentations, I believe that the record provides ample evidence to support that the Patient did not have adequate information that would have led to the discovery of the malpractice until December 28, 1998. Because the Patient instituted her action within a reasonable time after that date, I would affirm the trial court's denial of the Doctor's motion for summary judgment on this issue.