ATTORNEYS FOR APPELLANTS
L. THOMAS AND NORMA SUE BOOTH
James P. Fenton
Alan VerPlanck
Leonard E. Eilbacher
Eilbacher Scott, P.C.
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE
ROBERT G. WILEY, M.D.
Dane L. Tubergen
Kathleen A. Kilar
Hunt Suedhoff Kalamaros, LLP
Fort Wayne, Indiana

ATTORNEY FOR APPELLEES
RONALD K. NORLUND, O.D. AND
MIDWEST EYE CONSULTANTS, P.C.
John Johnston
Johnston & Johnston
Wabash, Indiana

# In the
# Indiana Supreme Court

No. 02S03-0402-CV-95

L. THOMAS BOOTH AND
NORMA SUE BOOTH,                                    *Appellants (Plaintiffs below),*

v.

ROBERT G. WILEY, M.D.,
RONALD K. NORLUND, O.D., AND
MIDWEST EYE CONSULTANTS, P.C., D/B/A CATARACT
& LASER INSTITUTE,

*Appellees (Defendants below).*

Appeal from the Allen Superior Court, No. 02D01-0107-CT-260
The Honorable Nancy Eshcoff Boyer, Judge

On Petition To Transfer from the Indiana Court of Appeals, No. 02A03-0210-CV-355

**December 30, 2005**

**Dickson, Justice.**


In this medical malpractice action, the plaintiffs, L. Thomas Booth and Norma Sue

Booth, husband and wife, appeal from a grant of summary judgment in favor of the defendants,

Robert G. Wiley, M.D., Ronald K. Norlund, O.D., and Midwest Eye Consultants, P.C., d/b/a

Cataract & Laser Institute (collectively, "the defendants"). The Court of Appeals reversed.

Booth v. Wiley, 793 N.E.2d 1104 (Ind. Ct. App. 2003). We granted transfer and now reverse the summary judgment and remand the case to the trial court.

In their appeal, the plaintiffs contend that, because the evidence shows that they did not discover the alleged malpractice until more than two years after it occurred, and they initiated their action within eight months thereafter, the trial court erred in finding their action time-barred. The plaintiffs also assert that even if they are deemed to have discovered the alleged malpractice within two years after it occurred, they initiated their action within a reasonable time thereafter, as permitted by Indiana case law.[1]

"Summary judgment is appropriate where the evidence shows there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." Time Warner Entertainment Co., L.P. v. Whiteman, 802 N.E.2d 886, 895 (Ind. 2004); *see also* Ind. Trial Rule 56(C). The party seeking summary judgment has the burden of proving the non-existence of a genuine issue of material fact. Whiteman, 802 N.E.2d at 895. In determining the appropriateness of granting a summary judgment, the trial court and the reviewing appellate court construe all facts and reasonable inferences from those facts in favor of the nonmoving party. *Id*.

Indiana's statutory scheme governing medical malpractice actions contains a particular statue of limitations that provides, in relevant part:

> A claim, whether in contract or tort, may not be brought against a health care provider based upon professional services or health care that was provided or that should have been provided unless the claim is filed within two (2) years after the date of the alleged act, omission, or neglect.

Ind. Code § 34-18-7-1(b). Because this statutory time limit begins to run upon the occurrence of the alleged malpractice, without regard to the date of actual or constructive discovery of injury or malpractice by a person sustaining harm, literal application of the statute has been found unconstitutional in certain situations. In Martin v. Richey, 711 N.E.2d 1273 (Ind. 1999), we held that,

---

[1] The trial court granted summary judgment, concluding that the plaintiffs' action was barred by the medical malpractice statute of limitations and rejecting the plaintiffs' claims under the doctrine of fraudulent concealment and the Indiana Deceptive Consumer Sales Act. Appellants App'x. at 14. The plaintiffs, in their appellants' brief, do not challenge the summary judgment as to their the claims of fraudulent concealment or violation of the Deceptive Consumer Sales Act.

under Article 1, §§ 12 and 23 of the Indiana Constitution, the two-year occurrence-based statute of limitations may not constitutionally be applied to preclude the filing of a claim before a plaintiff either knows of the malpractice and resulting injury or discovers facts that, in the exercise of reasonable diligence, should lead to the discovery of the malpractice and the resulting injury. *Id.* at 1284.

In Van Dusen v. Stotts, 712 N.E.2d 491 (Ind. 1999), a companion case to Martin, we "formulated the general rule for triggering the running of [the Indiana Medical Malpractice Act's] two-year statutory period," and held that persons "unable to discover the malpractice and their resulting injury within the two-year statutory period" may "file their claims within two years of the date when they discover the malpractice and the resulting injury or facts that, in the exercise of reasonable diligence, should lead to the discovery of the malpractice and the resulting injury." *Id.* at 497. We explained, "In general . . . plaintiff's lay suspicion that there may have been malpractice is not sufficient to trigger the two-year period. At the same time, a plaintiff need not know with certainty that malpractice caused his injury, to trigger the running of the statutory time period." *Id.* at 499 (citations omitted). To illustrate the nature of proof needed to establish a plaintiff's date of discovery, Van Dusen provided the following example:

> Moreover, when it is undisputed that plaintiff's doctor has expressly informed a plaintiff that he has a specific injury and that there is a reasonable possibility, if not a probability, that the specific injury was caused by a specific act at a specific time, then the question may become one of law. Under such circumstances, generally a plaintiff is deemed to have sufficient facts to require him to seek promptly any additional medical or legal advice needed to resolve any remaining uncertainty or confusion he may have regarding the cause of his injury and any legal recourse he may have, and his unexplained failure to do so should not excuse a failure to timely file a claim. Thus, in such a case, we conclude the date on which he receives such information—that is, information that there is a reasonable possibility that a specific injury was caused by a specific act at a specific time— is the date upon which the two-year period begins to run.

*Id.* (citations omitted).

Two subsequent cases applied the Martin/Van Dusen rule, likewise emphasizing that to trigger the running of the statute of limitations, a patient must discover the malpractice itself or facts that, in the exercise of reasonable diligence, should lead to the discovery of the malpractice and the resulting injury. In Harris v. Raymond, 715 N.E.2d 388 (Ind. 1999), we affirmed the de-

nial of summary judgment where the plaintiff, despite experiencing pain and adverse symptoms following a medical procedure, did not learn of the reason for her continuing medical problems until after expiration of the two-year medical malpractice statute of limitations. We found that the plaintiff "could not have discovered the alleged negligence within the statutory period, and to apply the statute of limitations would force her to bring a claim before she knew or reasonably could have known of the existence of such claim." *Id.* at 392. Citing Van Dusen, we held that "the plaintiff has two years after the discovery of the malpractice or the discovery of those facts which, in the exercise of ordinary diligence, should lead to the discovery of the malpractice within which to bring a claim." *Id.* at 396. And in Halbe v. Weinberg, 717 N.E.2d 876 (Ind. 1999), we reversed a summary judgment based on the medical malpractice statute of limitations where the action was filed in April 1992 and we found "nothing in the record that would lead us to believe that, in the exercise of reasonable diligence, [the plaintiff] should have had any reason whatsoever to suspect she had a cause of action against her doctor before 1992." *Id.* at 882.

Shortly thereafter, however, we upheld application of the medical malpractice two-year statute of limitations "to bar a claim that was discovered several months before the limitations period expired and well within two years of its occurrence." Boggs v. Tri-State Radiology, Inc., 730 N.E.2d 692, 694 (Ind. 2000). Distinguishing Martin and Van Dusen as cases where the filing deadline demanded by the statute is not reasonably possible, we emphasized that the plaintiff was not similarly situated because she "became aware of her injury eleven months before the statute of limitations expired." *Id.* at 695. Noting that these circumstances did not present a "practical impossibility of asserting the claim," we recognized that there may be other situations where "discovering and presenting the claim within the time demanded by the statute is not reasonably possible," in which case the statute of limitations may "run afoul of the Indiana Constitution." *Id.* at 697-98.

Focusing on the length of time the plaintiff had between discovery and the expiration of the limitations period, the discussion in Boggs summarily referred to a plaintiff's discovery of injury without any specific reference to the discovery of the malpractice itself, or facts that in the exercise of reasonable diligence should lead to the discovery of the malpractice. This observation, however, did not represent a retreat from the rule of Martin and Van Dusen that the discov-

ery date is triggered when a plaintiff either (1) knows of the malpractice and resulting injury or (2) learns of facts that, in the exercise of reasonable diligence, should lead to the discovery of the malpractice and the resulting injury.

Synthesizing the holdings in <u>Martin</u>, <u>Van Dusen</u>, and <u>Boggs</u>, the following methodology guides the application of the medical malpractice statute of limitations. Initially, a court must determine the date the alleged malpractice occurred and determine the discovery date—the date when the claimant discovered the alleged malpractice and resulting injury, or possessed enough information that would have led a reasonably diligent person to make such discovery. If the discovery date is more than two years beyond the date the malpractice occurred, the claimant has two years after discovery within which to initiate a malpractice action. But if the discovery date is within two years following the occurrence of the alleged malpractice, the statutory limitation period applies and the action must be initiated before the period expires, unless it is not reasonably possible for the claimant to present the claim in the time remaining after discovery and before the end of the statutory period. In such cases where discovery occurs before the statutory deadline but there is insufficient time to file, we have not previously addressed how much time should be permitted. But because <u>Boggs</u> permits such an action to be commenced after the statutory two-year occurrence-based period when timely filing is not reasonably possible, we hold that such claimants must thereafter initiate their actions within a reasonable time.

The present case arises from medical treatment received by Thomas Booth from Dr. Norlund, an optometrist with Midwest Eye Consultants, and Dr. Wiley, a surgeon. The following salient dates as to the statute of limitations issue are not in dispute:

- October 1998 – Mr. Booth, already suffering from preexisting cataracts and glaucoma, consulted Dr. Norlund, who evaluated and referred him to Dr. Wiley for Lasik[2] surgery.
- November 2, 1998 – Dr. Wiley performed Lasik surgery on both of Mr. Booth's eyes.

---

[2] The United States Food and Drug Administration, which is responsible for the evaluation and approval of the various laser devise models used in Laser-Assisted In-Situ Keratomileusis (LASIK), describes the procedure as one using a laser to "permanently change[] the shape of the cornea, the clear covering of the front of the eye," in order to "reduce a person's dependency on glasses or contact lenses." U.S. Food and Drug Administration, *LASIK Eye Surgery*, *at* http://www.fda.gov/cdrh/LASIK/default.htm (last visited July 8, 2005). While the FDA refers to the procedure acronym in all capital letters, the parties do not, and in our opinion today, we follow the capitalization convention adopted by the parties.

- February 8, 1999 – Dr. Wiley performed Lasik enhancement surgery on both of Mr. Booth's eyes.
- May 4, 1999 – Dr. Wiley performed cataract surgery on Mr. Booth's right eye, but he was unable to implant an intra-ocular lens because of surgical complications.
- May 11, 1999 – Dr. Wiley successfully implanted a lens in Mr. Booth's right eye, but he was left with substantial swelling in and about the eye. Vision in his right eye after this surgery was very poor and Mr. Booth was scheduled for another surgery to replace the lens.
- August 2, 1999 – Dr. Wiley performed another surgery to replace the lens in Mr. Booth's right eye.
- October 1999 – Mr. Booth was nearly blind in his right eye. On Dr. Wiley's referral, he visited Dr. Sandra Chern, a retinal vitreous specialist, whose examination revealed extensive damage to Mr. Booth's right eye causing a permanent loss of vision.
- November 2000 – Dr. Wiley referred Mr. Booth to Dr. Rex Parent for cataract surgery on his left eye.
- December 4, 2000 – during consultation, Dr. Parent told Mr. Booth that Lasik surgery should not have been performed because of his preexisting cataracts and glaucoma.
- February 13, 2001 – Dr. Parent performed cataract surgery on Mr. Booth's left eye.
- July 24, 2001 – The Booths filed their medical malpractice complaint.[3]

*See* list of "undisputed facts" in trial court judgment, Appellants' App'x. at 9-11.

Based on these facts, the trial court granted summary judgment to the defendants. *Id*. at 9-11, 14. The trial court found that by the conclusion of his visit to Dr. Chern in October 1999, Mr. Booth knew that his right eye suffered from a posterior vitreous detachment, retinal hemorrhages, and damage to the optic nerve as a result of interruption of the blood supply, which damage and loss of vision was permanent. *Id*. at 13. From this finding, the trial court concluded that Mr. Booth "possessed enough information which would have led a reasonably diligent person to discover the alleged malpractice and resulting injury by October 1999," which "therefore fell within the two-year limitation period." *Id*. Focusing upon alleged malpractice occurring November 2, 1998; February 8, 1999; and May 11, 1999, the court then found that the statute of

---

[3] The trial court treats July 24, 2001, as the date this action was filed. Appellants' App'x. at 11. On that date the plaintiffs filed their complaint against all defendants in Allen Superior Court. *Id.* at 16. Plaintiffs' counsel report that this filing was based on information received from the Indiana Department of Insurance that Dr. Norlund and Midwest were not qualified providers under the Indiana Medical Malpractice Act. *Id.* at 93-94. After being informed that this information was incorrect and that said defendants were qualified under the Act, the plaintiffs filed their complaint with the Department of Insurance on September 18, 2001. *Id.* at 94; Appellees Norlund and Midwest App'x. at 13.

limitations "did not shorten the window of time between the [October 1999] discovery of the alleged malpractice and the expiration of the limitation period so unreasonably that it became impractical" for the Booths to file their claim. *Id.* at 13-14.

The plaintiffs challenge the summary judgment, asserting that at no time related to the October 1999 examination did Dr. Chern advise or suggest that Mr. Booth's vision problems were related to the Lasik surgery. The plaintiffs also emphasize evidence indicating that Dr. Wiley had continued to present other explanations for the vision difficulties, such as glaucoma and plaque associated with "mini strokes," without ever mentioning the Lasik surgeries as the cause of the worsening condition. The plaintiffs' complaint alleges that Dr. Norlund and Dr. Wiley were negligent in the recommendation of Lasik surgery and their evaluation prior to surgery, and that Dr. Wiley negligently caused the loss of blood supply to and damage of the right optic nerve. *Id.* at 18. In their Appellants' Brief, they describe the malpractice as "inform[ing] a patient with a history of glaucoma and cataracts and with very poor vision that he was a viable candidate for Lasik vision correction surgery and, thereafter, [performing] Lasik surgery on that patient." Br. of Appellants at 7. According to the plaintiffs, after the ill-advised surgery and resulting vision deterioration, Dr. Norlund and Dr. Wiley assured Mr. Booth that his vision problems did not arise from the surgery, but rather from another medical condition for which Mr. Booth was consulting them. *Id.* The plaintiffs urge that, particularly in light of these assurances, Mr. Booth did not reasonably suspect medical malpractice until his consultation with Dr. Parent in December 2000, where he learned for the first time that the cause of his vision difficulties might have been the Lasik surgery. Considering this as the date the plaintiffs learned of facts that should have led to the discovery of the malpractice and resulting injury, the plaintiffs' complaint filed seven months later was easily within the two-year period permitted under Martin, Van Dusen, and Harris.

The defendants contend that summary judgment was appropriate because of the undisputed evidence that Mr. Booth suffered from problems almost immediately after his surgeries and that within two years of the earliest possible act of alleged malpractice, he learned from Dr. Chern of various and extensive problems in his right eye, including the permanent loss of vision. The defendants argue these events establish as a matter of law that Mr. Booth knew of facts that,

7

in the exercise of reasonable diligence, should have led him to discover his alleged malpractice claims within the two-year occurrence-based statute of limitations, but that the plaintiffs did not initiate this action within the time prescribed by the statute of limitations.

Citing one or more of three cases decided by the Court of Appeals since <u>Martin</u> and <u>Van Dusen</u>, all the defendants seek to minimize the amount of information needed by a malpractice claimant to constitute discovery of the alleged malpractice.

In <u>Johnson v. Gupta</u>, 762 N.E.2d 1280 (Ind. Ct. App. 2002), *trans. not sought,* the court upheld the grant of summary judgment for the defendants because the plaintiff's action was not timely filed. The court determined that within seventeen months, at the latest, of the alleged act of malpractice, the plaintiff "discovered facts that, in the exercise of reasonable diligence, *should have led to the discovery of the malpractice*." *Id.* at 1283 (emphasis added). <u>Gupta</u> includes a statement disapproving of the assertion that the statute of limitations is "tolled until the patient discovers a causal link between the physician's actions and the patient's injury." *Id.* But the <u>Gupta</u> court expressly recognized that the occurrence-based statute of limitations does not apply "in cases where the patient does not suffer symptoms that put the patient *on notice that something may have gone wrong* in the course of medical treatment." *Id.* (emphasis added).

The Court of Appeals reversed the denial of summary judgment in <u>Rogers v. Mendel</u>, 758 N.E.2d 946 (Ind. Ct. App. 2001), *trans denied*, holding that a malpractice claim was barred by the statute of limitations where it was filed about six and one half years after the alleged act of malpractice, but only twenty-one months after the point at which the plaintiff had received "enough information that, in the exercise of reasonable diligence, should have led to the discovery of the alleged malpractice." *Id.* at 952. The court did not apply the <u>Van Dusen</u> rule permitting a full two years after discovery to file the action, but instead found that the plaintiffs had "ten months of the occurrence-based two-year statute of limitations" to file their complaint, which timeframe made such filing "reasonably possible" (but the court calculated the limitation period as beginning with the patient's release from the doctor's care rather than from the occurrence of the malpractice). *Id.* Because the court's rationale intermixed the analysis applicable to the theory of fraudulent concealment with that applicable when malpractice is discovered less

than two years after its occurrence, we believe this decision is not helpful. *See* Boggs, 730 N.E.2d at 697-699.

In GYN-OB Consultants, L.L.C. v. Schopp, 780 N.E.2d 1206 (Ind. Ct. App. 2003), the court reversed the denial of the defendants' motion for summary judgment based on the medical malpractice statute of limitations, finding that the plaintiff, by two months after the occurrence of the alleged malpractice, had "information that *should have led her to the discovery of the malpractice*." *Id.* at 1211 (emphasis added). The court noted that "the [p]atient experienced from the outset symptoms that . . . at the very least would cause a person of reasonable diligence to take action that would lead to the discovery of the malpractice." *Id*. Like Gupta, the court in Schopp did not rest upon the plaintiff's discovery of symptoms alone, but emphasized that discovery occurs only when a plaintiff has facts that should reasonably lead to the discovery of the malpractice.

While the facts stressed by the defendants in the present case demonstrate that Mr. Booth had knowledge within the period prescribed by the statute of limitations that he had serious vision problems and probable permanent vision impairment, they do not necessarily establish as an undisputed issue of fact that this amounts to discovery of "facts which, in the exercise of reasonable diligence, should lead to the discovery of the medical malpractice." Van Dusen, 712 N.E.2d at 497. Mr. Booth had already been suffering from cataracts and glaucoma before he first consulted the defendant physicians. And factual questions exist regarding representations made to Mr. Booth by Dr. Wiley attributing Mr. Booth's symptoms to causes unrelated to the Lasik surgery. Furthermore, there is no evidence establishing that the October 1999 examination by Dr. Chern provided Mr. Booth with any information that should reasonably have caused Mr. Booth to doubt Dr. Wiley's representations. The medical description of Mr. Booth's right-eye problems provided by Dr. Chern in October 1999 did not establish the non-existence of a genuine question of fact regarding whether Mr. Booth was put "on notice that something may have gone wrong in the course of medical treatment." Gupta, 762 N.E.2d at 1283.

The evidence does not indisputably establish that Mr. Booth discovered the malpractice and resulting injury, or acquired knowledge sufficient to lead a reasonably diligent person to dis-

cover the malpractice and resulting injury, until December 4, 2000, when Dr. Parent advised him that the Lasik surgery should not have been performed because of his preexisting cataracts and glaucoma. Therefore, as to alleged malpractice occurring more than two years earlier, the discovery occurred outside the two-year occurrence-based statute of limitations, authorizing the plaintiffs to initiate their action within two years after discovery, with which they complied by initiating this action on July 24, 2001, or September 18, 2001.[4] Thus, the statute of limitations does not preclude any claims arising out of Dr. Norlund's evaluation, advice, and referral of October 1998 and those arising from Dr. Wiley's surgery on November 2, 1998. As to these claims, it was error to grant the defendants' motions for summary judgment.

While reaching this conclusion under the facts of this case, we are not holding that an expert's advice is always required to put a patient on notice that problems may be due to malpractice. In fact, in most cases, such advice is not required. It is true in this case because the symptoms were reasonably attributable to Mr. Booth's pre-treatment condition. But in many cases, the malpractice produces conditions that reasonably suggest the possibility of malpractice without any expert advice. As noted in our discussion above, the discovery date will be triggered when a patient either (1) knows of the malpractice and resulting injury or (2) learns of facts that, in the exercise of reasonable diligence, should lead to the discovery of the malpractice and the resulting injury. This does not necessarily require a medical advisement, but may arise from a patient's ordinary experiences and observations, provided that these facts are such that they do or should reasonably lead to the discovery of the malpractice and resulting injury.

The plaintiffs' malpractice claims against Dr. Norlund and Midwest arise from the doctor's medical services on October 26, 1998, and up to November 2, 1998. Plaintiffs' Memorandum in Opposition to the Motion for Summary Judgment of Defendants Dr. Norlund and Midwest, Appellants' App'x. at 64-65, 68, 69. The plaintiffs assert that the "gravamen" of their complaint against Dr. Wiley was his original Lasik surgery performed on November 2, 1998. Plaintiffs' Memorandum of Law in Opposition to Defendant Dr. Wiley's Motion for Summary Judgment, Appellants' App'x. at 59. Thus as to the alleged malpractice of Dr. Norlund and Midwest,

---

[4] *See supra* note 3. Because we find the discovery date was December 4, 2000, the result is the same as to these claims regardless which filing date is used, because they were both within two years after the discovery date.

10

and that of Dr. Wiley on November 2, 1998, the principal malpractice claims asserted by the plaintiffs, we find that the complaint was timely filed.

To the extent that the plaintiffs' action may be deemed to include claims based on medical care provided *after* December 4, 1998 (two years before discovery), the plaintiffs were required to file their action within the time demanded by the occurrence-based statute, unless "not reasonably possible." Boggs, 730 N.E.2d at 697-98 (Ind. 2000). Dr. Wiley's arguments assert that the plaintiffs filed their complaint July 24, 2001, Br. of Appellee Wiley at 3, 7, 8, 13, and he does not claim untimely filing based upon the September filing with the Department of Insurance.[5] Here the plaintiffs' court filing was seven months after discovery. As to the medical procedures performed by Dr. Wiley in February 1999 and in May 1999, the plaintiffs had two and five months, respectively, after discovery within which to file their malpractice action within the statutory limitation period. Plaintiffs' counsel asserts that time was required to investigate, to obtain and review medical records, to interview and secure a report from Dr. Parent, and to determine whether the defendants were qualified providers under the statute. Affidavit of Alan Verplanck, Appellants' App'x. at 80-81. With respect to any malpractice claims against Dr. Wiley for medical care provided after December 4, 1998, he has not foreclosed the genuine issue of material fact regarding whether it was reasonably possible for the plaintiffs to file within the statutory limitation period after discovery nor, if not, whether the claims were filed within a reasonable time after discovery. As to such claims, it was error to grant Dr. Wiley's motion for summary judgment.

While finding summary judgment inappropriate on the issue of the medical malpractice statute of limitation, this defense may be presented for resolution based upon the evidence presented at trial.

For these reasons, and having previously granted transfer, we reverse the judgment grant-

---

[5] Whether compliance with the statute of limitations is determined by the date of the court filing or the filing with the Department of Insurance has received attention in several recent cases. *See, e.g.,* Guinn v. Light, 558 N.E.2d 821, 824 (Ind. 1990); Lusk v. Swanson, 753 N.E.2d 748, 752 (Ind. Ct. App. 2001); Mayfield v. Continental Rehab. Hosp., 690 N.E.2d 738 (Ind. Ct. App. 1998); Putnam County Hosp. v. Sells, 619 N.E.2d 968 (Ind. Ct. App. 1993). In the present case, however, the issue is raised only by Dr. Norlund and Midwest, and as to them the issue is not determinative.

11

ing the defendants' motions for summary judgment and remand to the trial court for further proceedings.

Boehm and Rucker, JJ., concur.  Shepard, C.J., dissents with separate opinion.  Sullivan, J., dissents with separate opinion.

**Shepard, Chief Justice, dissenting.**

Since the seminal holdings about the Indiana's medical malpractice statute in Justice De-Bruler's opinion, Johnson v. St. Vincent Hospital, 273 Ind. 374, 404 N.E.2d 585 (1980), nearly every decision has adhered to the declaration that the occurrence-based statute of limitations is constitutional on its face.

In Martin v. Richey, 711 N.E.2d 1273 (Ind. 1999), we held that the statute was unconstitutional as applied if it imposed "an impossible condition on [a] plaintiff's access to courts" by barring a malpractice action "simply because she has a disease which may not manifest significant pain or debilitating symptoms until several years after the initial diagnosis or misdiagnosis." Id. at 1282, 1284. The claim in Martin v. Richey was failure to diagnose breast cancer. We marked the date her injury manifested itself as the date she learned she had breast cancer, three years after the claimed misdiagnosis. Id. at 1284-85.

This ruling to acknowledge the impossibility of filing certain claims within two years of an act of malpractice was likewise evident in the companion case of Van Dusen v. Stotts, 712 N.E.2d 491 (Ind. 1999). There, we said that construing the statute consistent with the state constitution required permitting claims to be filed beyond the two-year limit for "plaintiffs who, because they suffer from cancer or other similar diseases or medical conditions with long latency periods…are unable to discover the malpractice and their resulting injury." Id. at 497.

In these cases and others, once the two-year occurrence statute is cast aside, it has become a challenge to identify any actual date on which the statute of limitation might begin to run. In Boggs v. Tri-State Radiology, 730 N.E.2d 692 (Ind. 2000), we held that the statute would run from the date of an alleged misdiagnosis of breast cancer, in an instance where the patient learned she had cancer thirteen months later.

The text of today's majority opinion suggests an intent to overrule these earlier holdings by saying that knowing you have been injured is not enough to warrant applying the statute the Legislature gave us. Rather, the majority puts us on the path that the statute of limitation cannot

run unless a medical expert informs the patient that the "pain or debilitating symptoms," (to use the marker Justice Selby laid down), are the product of negligence by a particular actor. Slip. opin. at 4, 9.

This declaration, of course, outlines a rule of limitation far more elastic than Indiana applies in any other field of tort law. The dramatic power of this new approach is made manifest by applying it to the remarkable underlying facts in this case – the malpractice claim centers on an operation whose results were a disaster virtually from the day it occurred.

This takes us light years from the restrained application of constitutional principles reflected in Martin v. Richey and turns the medical malpractice statute of limitations into a very liberal rule without so much as a word about why the Indiana Constitution requires the result.

**Sullivan, Justice, dissenting.**

I respectfully dissent. I believe that the trial court properly analyzed this case when it concluded that, at least by the conclusion of Dr. Chern's examination in October, 1999, Mr. Booth knew that his right eye suffered from a posterior vitreous detachment, retinal hemorrhages, and damage to the optic nerve as a result of interruption of the blood supply and that the damage and loss of vision was permanent. I believe, as did the trial court, that this knowledge constituted sufficient information to lead a reasonably diligent person to discover the alleged malpractice and resulting injury by October, 1999. This date fell within the two-year medical malpractice statute of limitations, rendering untimely Mr. Booth's medical malpractice complaint filed on July 24, 2001.

The Court says that it does not intend that the result of its opinion "necessarily" to be that the medical malpractice statute of limitations only begins to run when a medical expert informs the patient that the pain or symptoms are the product of a particular provider's medical negligence. But that is the result here. And why is an expert opinion required here? It appears to be because "Mr. Booth had already been suffering from cataracts and glaucoma before he first consulted the defendant physicians," that is, because he had a pre-existing eye condition. If this is so, then it appears that an expert opinion is necessarily required whenever the alleged malpractice is associated with a pre-existing condition.

While not all medical treatment is associated with a pre-existing condition (e.g., purely elective cosmetic surgery; routine scheduled physical examinations, etc.), the reason for most medical treatment is precisely because of some pre-existing condition. The result of the Court's opinion today seems to me to be that the medical malpractice statute of limitations is tolled whenever the alleged malpractice is associated with a pre-existing condition until the patient receives an expert opinion that the pain or symptoms are the product of a particular provider's medical negligence. I believe that this conflicts with the mandate of the Medical Malpractice Act.