DICKSON, J.,
dissenting.
I dissent, believing that the majority today would create an unprecedented new and rigorous barrier preventing injured patients a reasonable opportunity to access the courts to seek remedy for medical malpractice claims, a barrier that fosters a climate of suspicion and doubt between patients and their health care providers. I also dissent from the majority’s application of its new standard to the facts presented.
Because of the similarities between this case and Overton v. Grillo, 896 N.E.2d. 499 (Ind.2008), also decided today, my dissenting observations are similar in both. In this Court’s seminal case of Booth, v. Wiley, 839 N.E.2d 1168, 1172 (Ind.2005), we expressly synthesized our prior medical malpractice statute of limitations jurisprudence from Boggs v. Tri-State Radiology, Inc., 730 N.E.2d 692 (Ind.2000), Martin v. Richey, 711 N.E.2d 1273 (Ind.1999), and Van Dusen v. Stotts, 712 N.E.2d 491 (Ind.1999), concluding that the discovery date “is triggered when a plaintiff either (1) knows of the malpractice and resulting injury or (2) learns of facts that, in the exercise of reasonable diligence, should lead to the discovery of the malpractice _” Booth, 839 N.E.2d at 1172 (emphasis supplied). Expressing this a different way, we described it as “the date when the claimant discovered the alleged malpractice and resulting injury, or possessed enough information that would have led a reasonably diligent person to make such discovery.” Id. (emphasis supplied). It is not enough that the facts “might” or “could” lead to such discovery, or that a mere possibility or potential malpractice is raised by such facts. No, Booth requires that the facts should lead or would have led to discovery of malpractice. An injured plaintiff is not required to suspect, investigate, or commence litigation unless the facts known are sufficiently significant as to create a reasonable probability that malpractice had occurred.
But the majority today appears to depart from Booth to require a plaintiff to file a medical negligence lawsuit whenever “the plaintiff in exercise of reasonable diligence should learn of the injury or disease and that it may be attributable to malpractice.” Opin. at 446 (emphasis added). The majority later emphasizes that an injured patient’s window for bringing an action against a negligent physician will be triggered if the patient “should know of both *455 the injury or disease and the treatment that either caused or failed to identify or improve it, even if there is no reason to suspect malpractice.” Opin. at 449 (emphasis added). In further contrast to the “should lead” standard established in Booth, the majority today declares that the limitation period will start “even if there is no basis to allege malpractice at that point,” opin. at 450 (emphasis added), and the majority believes the trigger date begins when the patient should have known “of the potential of malpractice.” Opin. at 450 (emphasis added).
I am also troubled that the new standard advanced by the majority today appears to impose upon injured patients an obligation of suspicious investigation never envisioned by Booth, and which is contrary to its express holding. It is reasonable for patients to trust their physicians’ medical care and advice. The law does a disservice when it fosters a climate of suspicion and doubt between patients and their health care providers, requiring patients to promptly question and investigate even normal and routine medical care they receive.
I also dissent to the majority’s application of its new standard to affirm summary judgment for Dr. Anigbo. The majority finds significant that the plaintiff “argued that not until November 2008 was he expressly advised that there may have been substandard execution of the surgery” and concludes that “once he was informed of the potential of malpractice reasonable diligence required investigation and assertion of the claim within the limitations period, if that could have reasonably been accomplished.” Opin. at 453.
The majority appears to base its result upon Herron’s response to interrogatory 22:
22. With respect to your allegation that you realized or discovered that you allegedly suffered injuries due to the negligence of this Defendant in November, 2003, state why you were unable to commence this action on or before March 8, 2004.
ANSWER: The extent of injuries was not made known to me until that time.
Appellant’s App’x at 83. The majority believes that the plaintiffs evidence on summary judgment “claimed only ignorance of the extent of his injuries,” opin. at 452, but not physical incapability to assert his claim. I disagree.
This single interrogatory answer is but one solitary item among many significant facts that are appropriate for consideration on the defendant’s motion for summary judgment. Abundant additional facts remain demonstrating that Herron was profoundly disabled during the three months that remained for him before the filing deadline once he learned sufficient information to attribute his injuries to medical negligence. Herron, a quadriplegic, was confined in a “halo” device, was on oxygen, and was unable to be transported by car. In November of 2003, just four months before the filing deadline, he had undergone a second spinal surgery, this one including removal of the bone graft and plate, “revision anterior spinal fusion” using another bone graft, and the application of the halo. Appellant’s App’x at 68.
In light of the evidence of Herron’s manifest disabilities, I cannot agree that his single interrogatory answer warrants summary judgment for Dr. Anigbo as to the initial spinal surgery of March 6, 2002, even under application of the new “potential for malpractice” standard adopted today by the majority. The totality of the evidence clearly demonstrates a genuine issue of material fact as to whether Her-ron’s incapacity prevented him from filing his complaint during the final four months of the statutory period and thus deprived *456 him of his constitutional right to a remedy by due course of law. City of Fort Wayne v. Cameron, 267 Ind. 329, 370 N.E.2d 338, 341 (1977).
I believe that the trial court’s grant of summary judgment should be reversed. For these reasons, I dissent.
RUCKER, J., concurs.