DICKSON, J.,
dissenting.
I disagree both with the rationale employed by the majority and its application to the facts in this case.
I.
In Booth v. Wiley, 839 N.E.2d 1168, 1172 (Ind.2005), this Court expressly synthesized our prior medical malpractice statute of limitations jurisprudence from Boggs v. Tri-State Radiology, Inc., 730 N.E.2d 692 (Ind.2000), Martin v. Richey, 711 N.E.2d 1273 (Ind.1999), and Van Dusen v. Stotts, 712 N.E.2d 491 (Ind.1999); and we concluded that the discovery date “is triggered when a plaintiff either (1) knows of the malpractice and resulting injury or (2) learns of facts that, in the exercise of reasonable diligence, should lead to the discovery of the malpractice and the resulting injury ... [.] ” Booth, 839 N.E.2d at 1172 (emphasis supplied). Expressing this a different way, we also described it as “the date when the claimant discovered the alleged malpractice and resulting injury, or possessed enough information that would have led a reasonably diligent person to make such discovery.” Id. (emphasis supplied). It isn’t enough that the facts “might” or “could” lead to such discovery, or that a mere possibility or potential malpractice is raised by such facts. No, Booth requires that the facts should lead or would have led to discovery of malpractice. An injured plaintiff is not required to suspect, *505 investigate, or commence litigation unless the facts known are sufficiently significant as to create a reasonable probability that malpractice had occurred.
But the majority today departs from Booth and appears to require a plaintiff to file a medical negligence lawsuit whenever the facts known to the plaintiff create a mere possibility that medical malpractice might have been involved. In contrast to the “should lead” standard established in Booth, the majority requires only “enough to put the plaintiff on inquiry notice of the possibility of malpractice.” Op. at 5, at 503. It finds that “the metastasized cancer brought to light the potential that the earlier mammogram had been misread.” Op. at 6, at 504. “Inquiry notice,” “possibility,” and “potential” for malpractice are concepts that impose upon injured patients an obligation of suspicious investigation never envisioned by Booth, and are contrary to its express holding. It is reasonable for patients to trust their physicians’ medical care and advice. The law does a disservice when it fosters a climate of suspicion and doubt, requiring patients to promptly question and investigate even normal and routine medical care provided by their doctors.
II.
In her separate concurring-in-result opinion in the Court of Appeals, Judge Robb believed that the plaintiff “could have reasonably believed that in July 1999, there was no malignancy, and that the cancer had first appeared sometime in the fifteen months between that mammogram and her September 2001 mammogram.” Overton v. Grillo, No. 64A04-0605-CV-278, 874 N.E.2d 404 (Ind.Ct.App.2007). Slip op. at 11. I agree.
I conclude that Dr. Grillo did not uncon-trovertibly establish that the plaintiff, upon learning that she had metastasized breast cancer in October 2000, in the exercise of reasonable diligence, “would” or “should” have discovered that malpractice had occurred in her routine mammography in July, 1999. In my view, this was a factual issue inappropriate for summary judgment.
For these reasons, I dissent.
RUCKER, J., concurs.