ATTORNEY FOR APPELLANTS
Timothy S. Schafer
Merrillville, Indiana

ATTORNEY FOR APPELLEES
Robert F. Parker
Merrillville, Indiana

# In the
# Indiana Supreme Court



**FILED**
Nov 13 2008, 12:02 pm
CLERK
of the supreme court,
court of appeals and
tax court

No. 64S04-0811-CV-595

LLOYD OVERTON, INDIVIDUALLY
AND AS PERSONAL REPRESENTATIVE
OF THE ESTATE OF CHRISTINE OVERTON,

*Appellants (Plaintiffs below),*

v.

MARSHALL GRILLO, D.O. AND
RADIOLOGIC ASSOCIATES OF
NORTHWEST INDIANA, INC., AN
INDIANA CORPORATION,

*Appellees (Defendants below).*

Appeal from the Porter Superior Court, No. 64D02-0110-CT-8838
The Honorable William Alexa, Judge

On Petition to Transfer from the Indiana Court of Appeals, No. 64A04-0605-CV-278

**November 13, 2008**

**Boehm, Justice.**

We hold that a medical malpractice claim for allegedly misreading a mammogram is barred by the two-year statute of limitations when the plaintiff learned of cancer with approximately nine months remaining in the limitations period.

**Facts and Procedural History**

This is an appeal from a grant of summary judgment in favor of the defendant. Accordingly, we take the facts from the designated evidence most favorable to the plaintiffs. Christine Overton had a routine mammogram on July 7, 1999. Dr. Marshall Grillo of Radiologic Associates of Northwest Indiana, Inc. (RANI) examined the resulting film and found no "malignancy, suspicious calcifications or dominant masses." Mrs. Overton was told that the "mammogram was normal." Fifteen months later, on September 27, 2000, a lump was discovered in her right breast in the course of an annual checkup. Another mammogram was performed on October 2, 2000, showing a lesion and clustered calcifications. An ultrasound and biopsy on the same date revealed carcinoma of the right breast, which had metastasized to the lymph nodes. On November 1, 2000, Mrs. Overton underwent a mastectomy and reconstructive surgery, during which four of the eleven adjacent lymph nodes were found to be cancerous and removed. Mrs. Overton then received chemotherapy and radiation treatments until July 2001, approximately two years after her first mammogram. Mrs. Overton was "advised of the possibility of a potential claim of medical negligence" in a meeting with her attorney on October 11, 2001. She testified in deposition that this was the first time she "had any information which led [her] to believe or suspect that the mammogram that Dr. Grillo interpreted in July of 1999 was not interpreted correctly[.]"

The Overtons filed suit against Dr. Grillo and RANI on October 19, 2001, alleging failure to "properly interpret" Mrs. Overton's July 7, 1999 mammogram, and seeking Mrs. Overton's damages and her husband's loss of consortium. In 2002, Dr. Grillo and RANI moved to dismiss the claim and for summary judgment, respectively, on the issue of the statute of limitations. The trial court denied both motions without explanation and the parties engaged in discovery. Over two years later, Dr. Grillo moved for summary judgment,[1] asserting that the claim was untimely and also that there was no malpractice. The latter point was supported by an affidavit from another physician. The trial court granted summary judgment on the statute of limitations, finding that the October 2, 2000 diagnosis of cancer "provided enough information to lead a

---

[1] The summary judgment appealed from in this case was filed by Dr. Grillo alone. The record does not indicate the status of the claim against RANI.

reasonably diligent person in Overton's position to have discovered the alleged malpractice." As of October 2, 2000, there were nine months remaining in the limitations period.

The Overtons appealed the grant of summary judgment. Mrs. Overton died on September 21, 2007, while her appeal was pending. Her husband, as personal representative of her estate, has since been substituted for her as a plaintiff. In an unpublished opinion, the Court of Appeals reversed and remanded, holding that the limitations period raised disputed issues of fact. Overton v. Grillo, No. 64A04-0605-CV-278, slip op. at 8 (Ind. Ct. App. October 2, 2007). We grant transfer concurrent with this opinion.

**Standard of Review**

This Court applies the same standard as the trial court when reviewing a grant of summary judgment; summary judgment is to be affirmed only if there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Row v. Holt, 864 N.E.2d 1011, 1013 (Ind. 2007). All facts established by the designated evidence, and all reasonable inferences from them, are to be construed in favor of the nonmoving party. Naugle v. Beech Grove City Sch., 864 N.E.2d 1058, 1062 (Ind. 2007). A medical malpractice defendant who asserts the statute of limitations as an affirmative defense bears the burden of establishing that the action was commenced beyond that statutory period. Boggs v. Tri-State Radiology, Inc., 730 N.E.2d 692, 695 (Ind. 2000). Once that is established, the burden shifts to the plaintiff to establish "an issue of fact material to a theory that avoids the defense." Id.

**Trigger Date and Incapacity Determinations**

Because Dr. Grillo is not a "qualified healthcare provider," this case is not governed by the Indiana Medical Malpractice Act (MMA). The parties agree, however, that the two-year statute of limitations for claims of negligence in professional services applies. See Ind. Code § 34-11-2-3 (2004). They also agree that precedents under the MMA are relevant to interpretation of the professional services statute of limitations, which substantially tracks the limitations language of the MMA.[2] Both statutes require a complaint to be filed within two years after the

---

[2] Compare I.C. § 34-18-7-1(b) ("A claim . . . may not be brought against a health care provider based upon professional services or health care that was provided or that should have been provided unless the claim is filed within two (2) years after the date of the alleged act, omission, or neglect . . . .") (qualified

3

alleged negligent act or omission. However, the date on which the limitations period is activated—the "trigger date"—as explained in Herron v. Anigbo, No. 45S03-0811-CV-594, ____ N.E.2d ____, slip. op. at 5 (Ind. Nov. 13, 2008), may in certain circumstances be deferred. A plaintiff who cannot reasonably know of the alleged malpractice within the two-year period may institute a claim for relief within two years from the trigger date. Martin v. Richey, 711 N.E.2d 1273, 1282 (Ind. 1999); Van Dusen v. Stotts, 712 N.E.2d 491, 493 (Ind. 1999). If a trigger date occurs before the expiration of the limitations period, the plaintiff's claim will be barred unless filing before the expiration of the two-year period was not possible with reasonable diligence. Herron, slip op. at 5. In any event the complaint must be filed within a reasonable period after the trigger date. Id. The trigger date, whether before or after the expiration of the limitations period, is the point at which the plaintiff either knows of malpractice or "learns of facts that, in the exercise of reasonable diligence, should lead to the discovery of the malpractice and the resulting injury." Id. (quoting Booth v. Wiley, 839 N.E.2d 1168, 1172 (Ind. 2005)).

The Overtons did not file their complaint within two years of the alleged act of negligence by Dr. Grillo. The Overtons argue that the limitations period was tolled because their trigger date was October 11, 2001, when Mrs. Overton was first told by her attorney of the possibility of malpractice. They also contend there is a material issue of fact whether their belated filing was the product of reasonable diligence in light of Mrs. Overton's alleged physical incapacity during the limitations period. Dr. Grillo denies that there was any malpractice in the July 7, 1999 diagnosis, but argues that the Overtons knew or should have known of the potential of a malpractice claim at least by November 1, 2000, when Mrs. Overton's surgery revealed cancer in her lymph nodes. He also contends that the issue of incapacity was waived because it was raised for the first time in the plaintiffs' motion to reconsider the grant of summary judgment, and even if the issue was preserved, there is no designated evidence establishing the incapacity to file. We agree that summary judgment was properly granted on the basis of the statute of limitations.

---

healthcare providers) with id. § 34-11-2-3 ("An action of any kind for damages . . . based upon professional services rendered or which should have been rendered, may not be brought, commenced, or maintained, in any of the courts of Indiana against physicians . . . unless the action is filed within two (2) years from the date of the act, omission, or neglect complained of.") (professional services).

This case is controlled by Boggs v. Tri-State Radiology, Inc., 730 N.E.2d 692 (Ind. 2000). Mrs. Boggs saw a doctor in July 1991 after detecting a mass in her left breast. Id. at 694. A mammogram was taken and Mrs. Boggs was told to return in one year. Id. In July 1992, a second mammogram was taken, after which a biopsy was recommended. Id. The August 1992 biopsy revealed a malignant mass in Mrs. Boggs's right breast. Id. It was later discovered that her breast cancer was in an advanced stage and had metastasized to her liver. Id. We held that Mrs. Boggs "became aware of her injury" in August 1992, when the biopsy revealed cancer. Id. at 695. The complaint, filed in July 1994, was therefore time-barred as to claims based on the 1991 treatments because the August 1992 trigger date provided enough time to file even though Mrs. Boggs underwent extensive chemotherapy and died before the statute ran. Id. at 695-96. The Overtons distinguish Boggs by pointing out that Mrs. Boggs sought treatment for a lump but Mrs. Overton came in for a routine checkup. This difference is not relevant, however, to the critical point of whether the plaintiff has enough information to know of the injury and that it may be attributable to malpractice. Both Mrs. Boggs and Mrs. Overton knew of their condition and that they had not been previously diagnosed. That is enough to put the plaintiff on inquiry notice of the possibility of malpractice and in both cases the remaining several months was more than adequate to explore the issue. Indeed, the Overtons filed their complaint eight days after they contend they first learned of potential malpractice.

Mrs. Overton was first told of the possibility of a malpractice claim in October 2001. A plaintiff need not be advised of the possibility of malpractice where it should be obvious that it might be present. See Moyer v. Three Unnamed Physicians from Marion County & Del. County, 845 N.E.2d 252, 259 (Ind. Ct. App. 2006) (holding that the date of legal advice is irrelevant to the determination of the trigger date). In Brinkman v. Bueter, 879 N.E.2d 549, 550-51 (Ind. 2008), decided after the appellate briefs were filed in this matter, Mrs. Brinkman's physician ruled out preeclampsia even though he noticed all three symptoms during a pregnancy check-up. Shortly after giving birth, Mrs. Brinkman was diagnosed with eclampsia. Id. at 551. Although the Brinkmans were told that Mrs. Brinkman's preeclampsia had been unusual because she had not exhibited any symptoms until after the birth, they did not file their complaint until nearly five years later, after another doctor told them of potential malpractice. Id. at 551-52. Although no medical or legal professional had advised the Brinkmans of possible improper treatment in the intervening five years, we held that their claim was untimely because the

5

eclampsia brought to light the potential of the preeclampsia and "nothing prevented the Brinkmans from bringing a claim about faulty diagnosis or treatment within the two-year statutory period." Id. at 554-55. Similarly, although no professional had advised the Overtons of possible malpractice, the metastasized cancer brought to light the potential that the earlier mammogram had been misread. Thus, as a matter of law, the trigger date was October 2, 2000, when Mrs. Overton learned that she had cancer.

Finally, nothing prevented the Overtons from filing in the nine months remaining in the limitations period. Any potential link between her 1999 mammogram and her cancer was not obscured by alternative explanations. See Booth v. Wiley, 839 N.E.2d 1168, 1174-76 (Ind. 2005) (holding that trigger date not when plaintiff began having eye problems because his doctors "continued to present other explanations for the vision difficulties" without mentioning the alleged act of malpractice as a potential cause). The trial court was free to disregard the issue of incapacity, which was raised for the first time in the plaintiff's motion to reconsider the grant of summary judgment. See Ind. Trial Rule 53.4 (stating that "[n]o hearing shall be required" on motions to reconsider and that "[u]nless such a motion is ruled upon within five (5) days it shall be deemed denied"). But even if the issue was preserved, there is no designated evidence establishing that Mr. Overton was incapacitated. Mrs. Overton's brief asserts that she suffered from "severe depression, anxiety, sleep deprivation," and went through chemotherapy and radiation sessions until July 2001. However, this evidence is insufficient as a matter of law to establish an ongoing incapacity.

**Conclusion**

The trial court's grant of summary judgment for Dr. Grillo is affirmed.

Sullivan, J., concurs.
Shepard, C.J., concurs in result.
Dickson, J., dissents with separate opinion in which Rucker, J., concurs.

**Dickson, J., dissenting.**

I disagree both with the rationale employed by the majority and its application to the facts in this case.

**I.**

In <u>Booth v. Wiley</u>, 839 N.E.2d 1168, 1172 (Ind. 2005), this Court expressly synthesized our prior medical malpractice statute of limitations jurisprudence from <u>Boggs v. Tri-State Radiology, Inc.</u>, 730 N.E.2d 692 (Ind. 2000), <u>Martin v. Richey</u>, 711 N.E.2d 1273 (Ind. 1999), and <u>Van Dusen v. Stotts</u>, 712 N.E.2d 491 (Ind. 1999); and we concluded that the discovery date "is triggered when a plaintiff either (1) knows of the malpractice and resulting injury or (2) *learns of facts that, in the exercise of reasonable diligence, <u>should lead</u> to the discovery of the malpractice and the resulting injury* . . . [.]"  <u>Booth</u>, 839 N.E.2d at 1172 (emphasis supplied). Expressing this a different way, we also described it as "the date when the claimant discovered the alleged malpractice and resulting injury, *or possessed enough information that <u>would have led</u> a reasonably diligent person to make such discovery*."  *Id*. (emphasis supplied).  It isn't enough that the facts "might" or "could" lead to such discovery, or that a mere possibility or potential malpractice is raised by such facts.  No, <u>Booth</u> requires that the facts *should lead* or *would have led* to discovery of malpractice.  An injured plaintiff is not required to suspect, investigate, or commence litigation unless the facts known are sufficiently significant as to create a reasonable *probability* that malpractice had occurred.

But the majority today departs from <u>Booth</u> and appears to require a plaintiff to file a medical negligence lawsuit whenever the facts known to the plaintiff create a mere possibility that medical malpractice might have been involved.  In contrast to the "should lead" standard established in <u>Booth</u>, the majority requires only "enough to put the plaintiff on *inquiry notice* of the *possibility* of malpractice."  Slip op. at 5.  It finds that "the metastasized cancer brought to light the *potential* that the earlier mammogram had been misread."  Slip op. at 6.  "Inquiry notice," "possibility," and "potential" for malpractice are concepts that impose upon injured patients an obligation of suspicious investigation never envisioned by <u>Booth</u>, and are contrary to

its express holding.  It is reasonable for patients to trust their physicians' medical care and advice.  The law does a disservice when it fosters a climate of suspicion and doubt, requiring patients to promptly question and investigate even normal and routine medical care provided by their doctors.

## II.

In her separate concurring-in-result opinion in the Court of Appeals, Judge Robb believed that the plaintiff "could have reasonably believed that in July 1999, there was no malignancy, and that the cancer had first appeared sometime in the fifteen months between that mammogram and her September 2001 mammogram."  Overton v. Grillo, No. 64A04-0605-CV-278 (Ind. Ct. App. 2007). Slip op. at 11.  I agree.

I conclude that Dr. Grillo did not uncontrovertibly establish that the plaintiff, upon learning that she had metastasized breast cancer in October 2000, in the exercise of reasonable diligence, "would" or "should" have discovered that malpractice had occurred in her routine mammography in July, 1999.  In my view, this was a factual issue inappropriate for summary judgment.

For these reasons, I dissent.

Rucker, J., concurs.

2