ATTORNEYS FOR APPELLANT
Mark D. Gerth
Donald L. Dawson
Kightlinger & Gray, LLP
Indianapolis, Indiana

ATTORNEY FOR APPELLEE
David D. Becsey
Zeigler Cohen & Koch
Indianapolis, Indiana



# In the
# Indiana Supreme Court

No. 49S02-1405-MI-355

LARRY ROBERT DAVID, II, AS SPECIAL ADMINISTRATOR
  OF THE ESTATE OF LISA MARIE DAVID, DECEASED,        *Appellant (Respondent)*,

v.

WILLIAM KLECKNER, M.D.,                              *Appellee (Petitioner)*.

Appeal from the Marion Superior Court, No. 49D13-1208-MI-30944
The Honorable Timothy W. Oakes, Judge

On Transfer from the Indiana Court of Appeals, No. 49A02-1301-MI-13

**May 28, 2014**

**Dickson, Chief Justice.**

This appeal challenges a summary judgment in a wrongful death medical malpractice case brought by the deceased patient's husband as administrator of her estate. The defendant physician sought summary judgment on grounds that the plaintiff's complaint was barred by the applicable statute of limitations. The trial court granted the motion and, finding no reason for delay, entered final judgment against the plaintiff. The Court of Appeals affirmed in a memorandum decision. David v. Kleckner, No. 49A02-1301-MI-13, 989 N.E.2d 843 (Ind. Ct. App. June 14, 2013) (table). We now grant transfer and reverse the trial court.

In its review of a summary judgment, an appellate court applies the same standard as the trial court. Overton v. Grillo, 896 N.E.2d 499, 502 (Ind. 2008). Summary judgment may be granted, or affirmed on appeal, only "if the designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Ind. Trial Rule 56(C). All facts and reasonable inferences established by the designated evidence are to be construed in favor of the non-moving party. Overton, 896 N.E.2d at 502. When a medical malpractice defendant asserts the statute of limitations as an affirmative defense, that defendant "bears the burden of establishing that the action was commenced beyond that statutory period." Id. If established, the burden shifts to the plaintiff to establish "an issue of fact material to a theory that avoids the defense." Id. (quoting Boggs v. Tri-State Radiology, Inc., 730 N.E.2d 692, 695 (Ind. 2000)).

In response to the defendant's motion for summary judgment, the plaintiff argued in the trial court, and argues on appeal, that (a) the complaint was filed within a reasonable time after the plaintiff discovered the malpractice and (b) the statute of limitations was tolled under the doctrine of fraudulent concealment, and the complaint was filed within a reasonable time after the concealment ceased.[1]

Dr. William Kleckner was the family physician for Lisa David, the plaintiff's decedent, for approximately ten years until the time of her death on March 25, 2011. During her annual physical on November 24, 2008, Dr. Kleckner conducted a routine pap smear, the results of which indicated abnormalities. A second pap smear was conducted two months later, on January 28, 2009, which also detected abnormalities. The pathologist reviewing the second pap smear submitted a report to Dr. Kleckner stating "[e]ndocervical and endometrial biopsy is recommended if clinically indicated." Appellant's App'x at 270. On February 27, 2009, Dr. Kleckner performed an endometrial biopsy, but not an endocervical biopsy. The performed endometrial biopsy was negative for signs of cancer or other medical conditions. At Dr. Kleckner's direction, his medical assistant contacted Lisa on March 13, 2009, and told her, among other things, "All okay," "Looks fine," and "Came back clear." Id. at 31, 68, 231. No endocervical biopsy was

---

[1] Because we find the first issue determinative, we decline to address the claim of fraudulent concealment.

ever performed, however, and Lisa was never told of the pathologist's recommendations regarding an endocervical biopsy. In the next five months, Lisa began to experience genital pain, discomfort, and bleeding. She saw a specialist in obstetrics and gynecology, Dr. Keith Bean, on September 1, 2009, although the parties dispute whether this was at the referral of Dr. Kleckner. Dr. Bean examined Lisa and detected a mass on Lisa's cervix, and on September 3, 2009, Dr. Bean's office informed Lisa that the mass was a cancerous tumor. The plaintiff contends, and Dr. Kleckner denies, that approximately one week after receiving this news, Dr. Kleckner assured Lisa that no tumor was present when he examined her on February 27, 2009—the date he performed the endometrial biopsy. Shortly after the discovery of her cervical tumor, Lisa began treatment for her cancer. Unfortunately, the treatment was not successful, and Lisa died on March 25, 2011.

It was in "mid to late February, 2011," that Lisa's husband, Larry David, "became suspicious of why Dr. Kleckner hadn't found any evidence of cancer or a tumor when he had last seen Lisa." *Id.* at 184. He consulted an attorney who provided medical information releases that Lisa signed and which enabled Larry on February 25, 2011, to obtain Dr. Kleckner's medical records, which he gave to the attorney for review by medical experts. Larry states that it was not until after Lisa's death on March 25, 2011, that he learned "Dr. Kleckner had not performed the recommended endocervical biopsy." *Id.* at 185. On July 1, 2011, three months and seven days after Lisa's death, the estate commenced this action by filing its proposed complaint for damages with the Department of Insurance. *Id*. at 30. The complaint alleged that Dr. Kleckner negligently failed to perform the recommended endocervical biopsy and that this mistake led to a late diagnosis of Lisa's cancer, resulting in a diminution in her chances of receiving effective treatment and ultimately her death. *Id.* at 32–33. The proposed complaint was filed more than 28 months after Dr. Kleckner allegedly failed to perform the endocervical biopsy.

Dr. Kleckner's motion for summary judgment is based on the statute of limitations under the Indiana Medical Malpractice Act which provides in relevant part:

> A claim, whether in contract or tort, may not be brought against a health care provider based upon professional services or health care that was provided or that should have been provided unless the claim is filed within two (2) years after the date of the alleged act, omission, or neglect . . . .

3

Ind. Code § 34-18-7-1(b).

Subsequent case law, however, has ameliorated the harsh effects resulting from literally applying this provision to prohibit every malpractice action commenced more than two years after the actual occurrence of the alleged act of medical negligence. In <u>Martin v. Richey</u>, 711 N.E.2d 1273 (Ind. 1999), we reversed a summary judgment based on the medical malpractice statute of limitations where the plaintiff alleged medical negligence in the failure to diagnose and treat breast cancer. She first learned of the cancer three years later and commenced her action within the next six months. This Court found the occurrence based statute of limitations unconstitutional as applied:

> Stated another way, the medical malpractice statute of limitations is unconstitutional as applied when plaintiff did not know or, in the exercise of reasonable diligence, could not have discovered that she had sustained an injury as a result of malpractice, because in such a case the statute of limitations would impose an impossible condition on plaintiff's access to courts and ability to pursue an otherwise valid tort claim. To hold otherwise would be to require a plaintiff to bring a claim for medical malpractice before becoming aware of her injury and damages, an essential element of any negligence claim, and this indeed would be boarding the bus to topsy-turvy land.

<u>Id.</u> at 1284 (footnote omitted). In <u>Van Dusen v. Stotts</u>, a companion case to <u>Martin</u>, we announced the general rule that persons "unable to discover the malpractice and their resulting injury within the two-year statutory period" may "file their claims within two years of the date when they discover the malpractice and the resulting injury or facts that, in the exercise of reasonable diligence, should lead to the discovery of the malpractice and the resulting injury." 712 N.E.2d 491, 497 (Ind. 1999). Ensuing decisions of this Court, however, present arguably incongruent views regarding the general rule allowing a plaintiff an opportunity, in the exercise of reasonable diligence, to discover malpractice.

The following year, this Court addressed the application of <u>Richey</u> and <u>Van Dusen</u> to a medical malpractice claim alleging medical negligence regarding the detection of breast cancer. We affirmed summary judgment applying the two-year statutory limitation period, explaining:

> [The plaintiff and plaintiff's decedent] had an 11-month window to file a medical malpractice claim after knowledge of the injury, yet did not. We hold that as long as the statute of limitations does not shorten this window of time so unreasonably that it is impractical for a plaintiff to file a claim at all . . . it is constitutional as applied to that plaintiff.

Boggs, 730 N.E.2d at 697. Five years later, in Booth v. Wiley, we synthesized the holdings in Martin, Van Dusen, and Boggs as follows:

> Initially, a court must determine the date the alleged malpractice occurred and determine the discovery date—the date when the claimant discovered the alleged malpractice and resulting injury, or possessed enough information that would have led a reasonably diligent person to make such discovery. If the discovery date is more than two years beyond the date the malpractice occurred, the claimant has two years after discovery within which to initiate a malpractice action. But if the discovery date is within two years following the occurrence of the alleged malpractice, the statutory limitation period applies and the action must be initiated before the period expires, unless it is not reasonably possible for the claimant to present the claim in the time remaining after discovery and before the end of the statutory period. In such cases where discovery occurs before the statutory deadline but there is insufficient time to file . . . we hold that such claimants must thereafter initiate their actions within a reasonable time.

839 N.E.2d 1168, 1172 (Ind. 2005). In Booth, the plaintiff argued that he became aware of deteriorating vision about 11 months after having Lasik surgery but "did not reasonably suspect medical malpractice" until about 25 months after the surgery. *Id.* at 1174. We reversed summary judgment, concluding that there remained a genuine issue whether the facts should have led the plaintiff, in the exercise of reasonable diligence, to discover the medical malpractice.

In two subsequent cases, the Court focused primarily on the date the plaintiff discovered the injury resulting from the alleged malpractice, and little if any consideration was given to the point in time when the plaintiff possessed enough information to lead to the discovery of the malpractice. In Brinkman v. Bueter, the Court declared that "[a] plaintiff does not need to be told malpractice occurred to trigger the statute of limitations," and "[n]othing prevented the [plaintiffs] from seeking further medical or legal advice." 879 N.E.2d 549, 555 (Ind. 2008) (citation omitted). The Brinkman Court did not discuss the synthesis presented in Booth nor did it provide any express analysis regarding whether the discovery of the injury, standing alone, provided sufficient cause to lead to the discovery of malpractice. Similarly, this opportunity for discovery, as an element of determining the discovery or trigger date, was not revisited in Overton. Without overruling or expressing disapproval of the discovery opportunity element holdings in Booth and Van Dusen, the Overton court found its decision controlled by Boggs and Brinkman, and summarily declared that "the trigger date" was when the plaintiff "learned that she had can-

cer," and that "nothing prevented" the plaintiff from timely filing her complaint. Overton, 896 N.E.2d at 504.

Contemporaneous with Overton, this Court also handed down Herron v. Anigbo, a medical malpractice case commenced 33 months after the alleged malpractice. The actual holding in Herron was:

> [O]nce [the plaintiff] was informed of the potential of malpractice reasonable diligence required investigation and assertion of the claim within the limitations period, if that could have reasonably been accomplished. As of [the date he was so informed], four months remained to assert a claim, and [the plaintiff] did not file until thirteen months later. As a matter of law four months was sufficient time to get a claim on file unless [the plaintiff] offered evidence that he was not reasonably able to consult an attorney who could investigate and file any claim within the limitations period.

897 N.E.2d 444, 453 (Ind. 2008). In *dicta*, however, the Herron Court declared, without citation to authority, that "reasonable diligence requires more than inaction by a patient who, before the statute has expired, does or should know of both the injury or disease and the treatment that either caused or failed to identify or improve it, *even if there is no reason to suspect malpractice*." *Id.* at 449 (emphasis added). Significantly, however, Herron described the "trigger date" as the date when "the plaintiff knew, or should have known, of the alleged symptom or condition, and facts that in the exercise of reasonable diligence would lead to discovery of the potential of malpractice." *Id.* at 450. And Herron quoted with approval from Booth, emphasizing that "the ultimate question becomes the time at which a patient 'either (1) knows of the malpractice and resulting injury or (2) learns of facts that, in the exercise of reasonable diligence, should lead to the discovery of the malpractice and the resulting injury.'" *Id.* at 448–49 (quoting Booth, 839 N.E.2d at 1172).

Last year, in Manley v. Sherer, this Court again acknowledged the discovery opportunity element: "In order for the date to be triggered, our case law requires that a plaintiff be aware of 'facts that, in the exercise of reasonable diligence, should lead to the discovery of the malpractice and the resulting injury.'" 992 N.E.2d 670, 674 (Ind. 2013) (quoting Booth, 839 N.E.2d at 1171 (quoting Van Dusen, 712 N.E.2d at 497)). And we applied the principle that, once a defendant—as the party moving for summary judgment—has established that the medical malpractice action was filed outside the statute of limitations, the plaintiff then has the burden to establish "an issue

6

of fact material to a theory that avoids the defense." *Id.* (quoting Boggs, 730 N.E.2d at 695). We reversed summary judgment finding "that there remains a genuine issue of material fact as to both the trigger date and, if within the two-year limitation period, whether the plaintiffs filed their complaint within a reasonable time." *Id.* at 675.

We conclude that neither Brinkman, Overton, nor Herron should be read to undermine the discovery opportunity element expressly recognized in Manley, Van Dusen and Booth. Thus, in determining whether a medical malpractice claim has been commenced within the medical malpractice statute of limitations, the discovery or trigger date is the point when a claimant either knows of the malpractice and resulting injury, or learns of facts that, in the exercise of reasonable diligence, should lead to the discovery of the malpractice and the resulting injury. Depending on the individual circumstances of each case, a patient's learning of the resulting disease or the onset of resulting symptoms may or may not constitute the discovery or trigger date. The issue to be determined is the point at which a particular claimant either knew of the malpractice and resulting injury, or learned of facts that would have led a person of reasonable diligence to have discovered the malpractice and resulting injury. If this date is less than two years after the occurrence of the alleged malpractice, the statute of limitations bars the claim unless it is not reasonably possible for the claimant to present the claim in the remaining time, in which case the claimant must do so within a reasonable time after the discovery or trigger date. Booth, 839 N.E.2d at 1172. If such date is more than two years after the occurrence of the malpractice, the claimant has two years within which to commence the action. *Id.*

In the present case, construing the facts and reasonable inferences established by the designated evidence in favor of the non-moving party, as we must, we find that the alleged malpractice (failure to perform an endocervical biopsy) occurred on February 27, 2009. On March 13, 2009, Dr. Kleckner's office assured Lisa that all was well. Over the next five months, Lisa began to experience genital pain, discomfort, and bleeding and saw a specialist in obstetrics and gynecology on September 1, 2009. He detected a mass on Lisa's cervix, and on September 3, 2009, informed Lisa that the mass was a cancerous tumor. Approximately one week later, Dr. Kleckner assured Lisa that no tumor was present when he had examined her and performed the endometrial biopsy on February 27, 2009. This assurance must be considered in evaluating

7

when Lisa or David knew facts that would have reasonably led them, in the exercise of reasonable diligence, to discover the alleged malpractice. *See* Herron, 897 N.E.2d at 451 ("Where the plaintiff knows of an illness or injury, but is assured by professionals that it is due to some cause other than malpractice, this fact can extend the period for reasonable discovery."); *see also* Halbe v. Weinberg, 717 N.E.2d 876, 882 (Ind. 1999). It was not until mid to late February, 2011, that Lisa's husband, Larry, became suspicious of why Dr. Kleckner hadn't found any evidence of cancer or a tumor when he had last seen Lisa. He promptly consulted an attorney, obtained Lisa's medical records, and learned on March 25, 2011 that Dr. Kleckner had failed to perform the recommended endocervical biopsy. This action was commenced on July 1, 2011.

Because Dr. Kleckner established from the designated evidence that this action was commenced more than two years after the date of the alleged malpractice, the burden shifted to the plaintiff to show "an issue of fact material to a theory that avoids the defense." Manley, 992 N.E.2d at 674; Herron, 897 N.E.2d at 448; Overton, 896 N.E.2d at 502 (all three cases quoting Boggs, 730 N.E.2d at 695). The plaintiff has carried this burden. While it is clear when Lisa became aware of her cervical cancer, it is a disputed fact when she should have, in the exercise of reasonable diligence, discovered whether Dr. Kleckner's failure to perform the endocervical biopsy caused or inhibited timely treatment. Moreover, the evidentiary facts, particularly Dr. Kleckner's assurances in early September, 2009—that likely would have minimized the plaintiff's suspicion and inquiry—support a reasonable inference that mid to late February, 2011, when Larry David first became suspicious of the possibility of malpractice, was the point when Lisa or Larry David either knew of the alleged malpractice and resulting injury, or learned of facts that, in the exercise of reasonable diligence, should have led to the discovery of the malpractice and the resulting injury. There are no undisputed facts that establish an earlier discovery or trigger date. Depending on the precise date in the period from "mid to late February" when Larry's suspicions were aroused, such discovery date may have been less than two years after the date of the alleged malpractice, February 27, 2009. In such case, as noted above, Lisa and David were obligated to initiate the malpractice action within a reasonable time. Booth, 839 N.E.2d at 1172.

We find that the holding in Manley applies equally here. In Manley, we found the defendants were not entitled to summary judgment because "there remain[ed] a genuine issue of material fact as to both the trigger date and, if within the two-year limitation period, whether the plaintiffs filed their complaint within a reasonable time." 992 N.E.2d at 675. The designated materials in the present case show that Larry promptly consulted an attorney after his suspicions arose, obtained medical information release forms, used those forms to obtain Lisa's medical records, and then returned the medical records to his attorney for evaluation by medical experts. We find that it was not necessarily an unreasonable delay for this action to be commenced on July 1, 2011, and that the plaintiff may be found to have filed within a reasonable time if the trigger date occurred within the statutory window.[2] The plaintiff has thus established "an issue of fact material to a theory that avoids the defense." Manley, 992 N.E.2d at 674; Herron, 897 N.E.2d at 448; Overton, 896 N.E.2d at 502 (all three cases quoting Boggs, 730 N.E.2d at 695). The defendant is not entitled to summary judgment on his defense asserting the medical malpractice statute of limitations.

We reverse the judgment of the trial court granting the defendant's motion for summary judgment.

Rucker, David, Massa, and Rush, JJ., concur.

---

[2] But if Larry's suspicions were aroused outside the statutory window, after February 27, 2011, then the discovery or trigger date was more than two years after the alleged malpractice. If that is true, then the action was commenced timely as a matter of law because it was within two years of such discovery date. *See* Booth, 839 N.E.2d at 1172 ("If the discovery date is more than two years beyond the date the malpractice occurred, the claimant has two years after discovery within which to initiate a malpractice action.").