# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Oct 11 2016, 8:23 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

B. Michael Macer
Lauren E. Berger
Evansville, Indiana

ATTORNEY FOR APPELLEE

Patrick A. Shoulders
Evansville, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Patricia A. Smith,

*Appellant-Plaintiff,*

v.

Kelly J. Fehrenbacher, M.D. and David J. Weaver, M.D.,

*Appellees-Defendants*

October 11, 2016

Court of Appeals Case No.
82A01-1512-CT-2364

Appeal from the Vanderburgh Circuit Court

The Honorable David D. Kiely, Judge

The Honorable Michael J. Cox, Magistrate

Trial Court Cause No.
82C01-1501-CT-480

**Altice, Judge.**

## Case Summary

[1]    Patricia A. Smith filed a medical malpractice action against Kelly J. Fehrenbacher, M.D. (Dr. Fehrenbacher) and David J. Weaver, M.D. (Dr. Weaver).  Dr. Fehrenbacher sought summary judgment on the ground that Smith's complaint was barred by the applicable statute of limitations.  The trial court granted the motion and, finding no just reason for delay, entered final judgment in favor of Dr. Fehrenbacher.  On appeal, Smith contends that summary judgment was improper because genuine issues of material fact exist regarding whether the claim against Dr. Fehrenbacher was timely filed.[1]

[2]    We affirm.

## Facts & Procedural History

[3]    In December 2009, while under the care of her primary physician, Dr. Fehrenbacher, Smith began complaining of lower extremity pain mostly when walking.  Smith returned to Dr. Fehrenbacher in January and March 2010 with continuing complaints of leg pain.  As a result, Dr. Fehrenbacher had Smith participate in a segmental pressure study on March 18, 2010.  The study showed mild bilateral end flow disease as a possible cause of Smith's pain.  The testing physician recommended further evaluation and indicated that "patient might benefit from MRA with special attention to the iliac arteries or with arteriogram." *Appendix* at 111.

---

[1] Dr. Weaver did not participate in this appeal.

[4]     Rather than ordering an MRA to determine whether Smith was suffering from vascular disease, Dr. Fehrenbacher sent Smith for an MRI and then, on March 24, 2010, referred her to Dr. Weaver, a neurosurgeon, for evaluation of lumbar problems as a possible cause of her leg pain. By the time Smith went to see Dr. Weaver, she could not walk any significant distance because of pain. In his treatment of Smith, Dr. Weaver never considered potential vascular causes of her problems and eventually suggested back fusion surgery. Smith had this surgery on September 1, 2010.

[5]     The surgery did not resolve Smith's pain, and she returned to Dr. Fehrenbacher for treatment. After Smith continued to report leg pain at several appointments, Dr. Fehrenbacher ordered another segmental pressure study on August 8, 2011. This test, performed on August 11, 2011, revealed findings "consistent with severe inflow disease suggesting either severe aortobiiliac disease or bilateral iliac disease." *Id*. at 128. The testing physician suggested further evaluation, including an arteriogram and referral for vascular surgery.

[6]     Dr. Fehrenbacher then referred Smith to Wajeehuddin Mohammed (Dr. Mohammed), a vascular surgeon. Dr. Mohammed performed the needed procedure – aortoiliac stenting – on September 20, 2011. This procedure resolved Smith's pain, allowing her to regularly walk three to four miles without pain.

[7]     On August 17, 2012, Smith filed her proposed complaint for damages against Dr. Fehrenbacher and Dr. Weaver with the Indiana Department of Insurance.

In her submission of evidence to the Medical Review Panel (the Panel), Smith began with an introduction summarizing her claims, which provided in part:

> Smith alleges that the Defendants failed to meet the standard of care in their respective treatments of Smith due to each Defendant's failure to accurately diagnose her vascular problems, their failure to timely treat her vascular problems, their failure to rule out vascular causes before having back fusion, and performing fusion surgery rather than vascular procedure such as aortoiliac stenting, which was much [sic] simpler and less invasive procedure that ultimately resolved her symptoms. Instead Dr. Weaver, with approval from Dr. Fehrenbacher, performed an unnecessary back fusion surgery without ever considering vascular disease as a source of her symptoms.

> ****

> Had Dr. Fehrenbacher followed up on the results of the segmental pressure studies and the clinical signs of vascular disease by timely ordering a MRA, as had originally been recommended, or had Dr. Weaver considered possible vascular causes such as the peripheral vascular disease that Smith in fact had prior to assuming a neurological cause despite numerous contra-indications, *then Smith would not have had to have endured the painful, costly and unnecessary lumbar fusion*.

*Id*. at 35, 37 (emphasis supplied). Within the discussion of care section of her submission, Smith focused entirely on the substandard care provided by the doctors leading up to the unnecessary back surgery. She concluded her submission as follows:

> As the aforementioned facts demonstrate, Defendants breached their duty of care to the Plaintiff, Patricia Smith, to provide

appropriate medical care. Said treatment rendered by Defendants was negligent and below the appropriate standard of care. Specifically, Dr. Fehrenbacher failed to order further MRA testing or an ateriogram [sic] despite suggestion of bilateral inflow disease in March 2010. She failed to properly inform Smith of the test results, her need for MRA testing, or the fact that vascular issues were a potential cause of her problems. Furthermore she was complicit in Dr. Weaver performing an unnecessary fusion that did not alleviate Smith's pain. Dr. Weaver ignored any other possible cause for Smith's problems and proceeded with a dangerous complicated surgery rather than ruling out vascular problems. In fact he did not even consider any other possible cause despite him having notes from Dr. Fehrenbacher revealing that vascular problems existed.

Considering the fact that the vascular and neurologic claudication can be difficult to differentiate, it was only prudent to avoid the much more complicated, painful, dangerous fusion surgery if there was a chance that a much simpler and less invasive procedure could resolve some or all of Smith's pain. The failure of Dr. Weaver's lumbar surgery and the later recovery of Smith from her aortoiliac stenting is proof that the lumbar surgery was not necessary.

For these reasons, this Panel should find both Defendants' care fell below the acceptable standards of care.

*Id.* at 49.

[8]     On October 31, 2014, the Panel issued a unanimous opinion that Dr. Fehrenbacher (as well as Dr. Weaver) failed to comply with the appropriate standard of care as charged in the complaint. Thereafter, Smith filed her complaint with the trial court on January 27, 2015.

[9] Dr. Fehrenbacher filed a motion for summary judgment on May 27, 2015, in which she argued that Smith's claims against her were time-barred. Among other things, Dr. Fehrenbacher designated as evidence the affidavit of Gregory C. Kiray, M.D. (Dr. Kiray), one of the Panel members. Dr. Kiray averred that he and the other Panel members concluded, based on the medical records, party submissions, and affidavits, that "Dr. Fehrenbacher failed to comply with the appropriate standard of care when, on or before March 24, 2010, she failed to order an MRA and/or further vascular consultation before or at the same time as making a neurosurgery referral." *Id*. at 31.

[10] In August 2015, the trial court granted Dr. Fehrenbacher's motion for summary judgment and thereafter made the order a final judgment. The trial court later denied a motion to correct error filed by Smith. Smith now appeals.

## Discussion & Decision

[11] When reviewing a summary judgment ruling, we apply the same standard as the trial court. *David v. Kleckner*, 9 N.E.3d 147, 149 (Ind. 2014). "Summary judgment may be granted, or affirmed on appeal, only 'if the designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Id*. (quoting Ind. Trial Rule 56(C)). The facts and reasonable inferences established by the designated evidence are to be construed in favor of the non-moving party. *Id*.

[12] Further, when a medical-malpractice defendant asserts the statute of limitations as an affirmative defense, that defendant bears the burden of establishing that the action was commenced beyond the statutory period. *Id.* If established, the burden shifts to the plaintiff to demonstrate an issue of fact material to a theory that avoids the defense. *Id.*

[13] The party appealing a grant of summary judgment has the burden of persuading this court that the ruling was erroneous. *See Perkins v. Stesiak*, 968 N.E.2d 319, 321 (Ind. Ct. App. 2012), *trans. denied.* The appellant also bears the burden of presenting a complete record with respect to the issues raised on appeal. *Finke v. N. Ind. Pub. Serv. Co.,* 862 N.E.2d 266, 272-73 (Ind. Ct. App. 2006) ("We cannot review a claim that a trial court erred in granting a motion for summary judgment when the appellant does not include in the record all the evidence designated to the trial court and before it when it made its decision."), *trans. denied*; *see also Lenhardt Tool & Die Co., Inc. v. Lumpe,* 703 N.E.2d 1079, 1084 (Ind. Ct. App. 1998), *trans. denied.*

[14] Our review has been hampered by Smith's failure to provide us with Dr. Fehrenbacher's motion for summary judgment, the memoranda filed in support of and in opposition to the motion, and Smith's own designation of evidence. Thus, we would be well within our discretion to conclude that Smith, as the appealing party, failed to present us with a record sufficient to conclude that the trial court erred in granting summary judgment to Dr. Fehrenbacher. *See Finke,* 862 N.E.2d at 273. Still, we prefer to decide cases on their merits whenever possible. *Omni Ins. Group v. Poage,* 966 N.E.2d 750, 753 (Ind. Ct. App. 2012),

*trans. denied.* We therefore address Smith's arguments based on the record before us, which does include Dr. Fehrenbacher's designated evidence.

[15] On appeal, Smith contends that summary judgment was improperly granted on the basis that her proposed complaint for damages was not timely filed within the Medical Malpractice Act's statute of limitations. Further, she contends that genuine issues of fact exist regarding the applicability of the doctrines of continuing wrong and fraudulent concealment.

[16] The Medical Malpractice Act's statute of limitations is found in Ind. Code § 34-18-7-1(b) and provides in relevant part:

> A claim, whether in contract or tort, may not be brought against a health care provider based upon professional services or health care that was provided or that should have been provided unless the claim is filed within two (2) years after the date of the alleged act, omission, or neglect….

The statute is an occurrence-based statute of limitations and, thus, the time for filing begins to run on the date the alleged negligent act occurred rather than the date it was discovered. *Brinkman v. Bueter*, 879 N.E.2d 549, 553 (Ind. 2008). A substantial body of case law has been developed to address situations in which a plaintiff was unable to discover the malpractice and his or her resulting injury within the two year period. *See, e.g., David*, 9 N.E.3d at 150-153. Where the discovery date is within the two year period following the occurrence, however, the statutory limitations period applies and "the action must be initiated before the period expires, unless it is not reasonably possible for the claimant to

present the claim in the time remaining after discovery and before the end of the statutory period." *Booth v. Wiley*, 839 N.E.2d 1168, 1172 (Ind. 2005).

[17] The parties agree that Dr. Fehrenbacher's misdiagnosis occurred on or about March 24, 2010, and was discovered no later than September 2011 by Smith. Because the discovery date was within two years of the misdiagnosis, Smith had until March 24, 2012, at least six months, to file her proposed complaint.[2] She filed several months after that date, on August 17, 2012.

[18] Smith asserts a number of arguments in an attempt to save her malpractice claim against Dr. Fehrenbacher. *See David*, 9 N.E.3d at 153 (once doctor established that the action was commenced more than two years after the date of the alleged malpractice, the burden shifted to plaintiff to show an issue of fact material to a theory that avoids the defense). Smith initially contends that the negligence continued through August 2011 because Dr. Fehrenbacher continued to treat her for leg pain after her back surgery and did not render a proper diagnosis until August 2011. In other words, Smith argues that issues of material fact exist with regard to whether the doctrine of continuing wrong tolled the commencement of the statute of limitations.

[19] "The doctrine of continuing wrong applies where an entire course of conduct combines to produce an injury." *Garneau v. Bush*, 838 N.E.2d 1134, 1143 (Ind. Ct. App. 2005), *trans. denied*. When this doctrine is applicable, the two-year

---

[2] Smith does not dispute that it was reasonably possible to present her claim in the time remaining.

statutory limitations period begins to run at the end of the continuing wrongful act. *Id.* "In order to apply the doctrine, the plaintiff must demonstrate that the alleged injury-producing conduct was of a continuous nature." *Id.*

[20] In both her submission to the Panel and her complaint, Smith has consistently maintained as the basis of her action that the misdiagnosis of two physicians resulted in her having an unnecessary back surgery. Smith's submission focused entirely on the alleged malpractice leading up to the surgery, and she made no argument to the Panel that Dr. Fehrenbacher's care after the surgery constituted a breach of the standard of care and resulted in injury. Indeed, Dr. Fehrenbacher designated the affidavit of Dr. Kiray, in which Dr. Kiray averred that the Panel members concluded "Dr. Fehrenbacher failed to comply with the appropriate standard of care when, on or before March 24, 2010, she failed to order an MRA and/or further vascular consultation before or at the same time as making a neurosurgery referral." *Appendix* at 31.

[21] Smith attempts to liken her case to *Garneau*, 838 N.E.2d 1134. In that case, the doctor performed a hip replacement on Garneau using an obsolete prosthesis. Following the surgery, Garneau experienced complications and ongoing pain for eighteen months. During this time, the doctor continued to prescribe pain medication and physical therapy. He eventually referred Garneau to an orthopedic surgeon, who replaced the prosthesis.

[22] In response to the doctor's motion for summary judgment, Garneau asserted that the doctrine of continuing wrong applied. Specifically, she argued that her

ongoing hip problems were the combined result of the doctor's use of an obsolete prosthesis and his improper treatment of her hip pain following surgery. To this end, Garneau designated the affidavit of a board-certified orthopedic surgeon and Associate Professor in the Department of Orthopedic Surgery at Indiana University Hospital. The expert averred that the doctor's use of an obsolete prosthesis and his failure to recommend revision of the prosthesis after Garneau continued to suffer hip pain six months post-surgery were breaches of the appropriate standard of care and resulted in her pain and inability to regain mobility and maximize her ability to ambulate. Based upon the affidavit, we concluded that Garneau had established a genuine issue of fact as to the applicability of the doctrine of continuing wrong. *Id.* at 1145.

[23] The record before us does not contain an expert affidavit addressing whether Dr. Fehrenbacher's post-surgery treatment of Smith constituted a breach of the standard of care that resulted in injury to Smith. Further, the Panel did not make a finding in this regard because, with respect to Dr. Fehrenbacher, Smith framed her allegations of negligence to encompass only acts leading up to the back surgery.

[24] The alleged injury in this case – an unnecessary surgery – was caused, in part, by Dr. Fehrenbacher's misdiagnosis and referral to Dr. Weaver. On the record before us, we cannot say that a question of fact exists as to whether Dr. Fehrenbacher's treatment of Smith during the eleven months after the surgery amounted to injury-producing conduct of a continuous nature to which the doctrine of continuing wrong would apply.

In a related argument, Smith contends that even if this doctrine does not apply to toll the statute of limitations, any negligence that occurred within the two years prior to August 17, 2012 – the date she filed her proposed complaint – should not be barred. Though not well developed, we take this argument as an invitation to consider Dr. Fehrenbacher's post-surgery treatment of Smith's leg pain as a separate act of negligence. Again, the difficulty with this argument is that it was not asserted in Smith's submission to the Panel or in her complaint, and she has not designated any evidence to establish a genuine issue of fact in this regard. *Cf. Garneau*, 838 N.E.2d at 1145-46 (expert affidavit established a genuine issue of material fact regarding separate act of negligence during post-surgery treatment).

Finally, Smith contends that her medical malpractice claim was timely filed because the doctrine of fraudulent concealment tolled the statute of limitations. Smith directs us to evidence that Dr. Fehrenbacher did not provide her with the results of her original segmental pressure study from March 2010 until Dr. Fehrenbacher did further follow-up in August 2011.

Under the equitable doctrine of fraudulent concealment, "a defendant who has prevented a plaintiff from discovering an otherwise valid claim, by violation of duty or deception, is estopped from raising a statute of limitations defense." *Id.* at 1142. In the medical malpractice context, the doctrine may operate to toll the statute of limitations until the termination of the physician-patient relationship or until discovery of the alleged malpractice, whichever is earlier. *Boggs v. Tri-State Radiology, Inc.*, 730 N.E.2d 692, 698 (Ind. 2000). When the

doctrine is applicable, "the patient must bring his or her claim within a reasonable period of time after the statute of limitations begins to run." *Id.*

[28] Constructive concealment, as opposed to active, may be merely negligent and arises when the physician does not disclose to the patient certain material information. *Garneau*, 838 N.E.2d at 1142-43. The physician's failure to disclose that which she knows, or in the exercise of reasonable care should have known, constitutes constructive fraud. *Id.* at 1143.

[29] Smith argues that the malpractice was not discovered until August 2011 and that, under the doctrine of fraudulent concealment, she had a full two years after that date to file her proposed complaint. On the contrary, assuming the doctrine applies, Smith had only "a reasonable period of time" after discovery in which to bring her claim. *Boggs*, 730 N.E.2d at 698; *see also Cacdac v. Hiland*, 561 N.E.2d 758, 759 (Ind. 1990) ("equity will bar the [statute of limitations] defense only if the claimant has instituted a cause of action within a reasonable time after discovering the alleged malpractice"); *Spoljaric v. Pangan*, 466 N.E.2d 37, 44 (Ind. Ct. App. 1984) ("equity will prevent the statute from barring a plaintiff's claim during the period the plaintiff is 'equitably disabled'" but it will not "provide a plaintiff with an entirely new period"), *trans. denied*. Smith waited over a year to file her claim, and she makes no argument on appeal that waiting this amount of time was reasonable.

[30] In conclusion, the record establishes that Smith discovered the alleged malpractice of Dr. Fehrenbacher within the applicable two-year statute of

limitations. Smith has not established a question of fact regarding whether the doctrines of continuing wrong and fraudulent concealment apply to save her complaint from being time-barred. Accordingly, the trial court did not err in granting summary judgment in favor of Dr. Fehrenbacher.

[31] Judgment affirmed.

[32] Bailey, J. and Bradford, J., concur.